IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

KATHERINE CAVANAUGH, a minor                08-CV-1351-BR
child, by and through BRIAN
CAVANAUGH, Guardian Ad Litem,               OPINION AND ORDER

      Plaintiff,

v.

PROVIDENCE HEALTH PLAN, an
Oregon nonprofit corporation,

      Defendant.


SAMUEL T. STANKE
1400 S.W. Montgomery Street
Portland, OR 97201
(503) 224-1127

      Attorney for Plaintiff

ARDEN J. OLSON
MARJORIE A. BERGER
Harrang Long Gary Rudnick, P.C.
360 E. 10th Avenue
Suite 300
Eugene, OR 97401-3273
(541) 485-0220

      Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Plaintiff's Motion (#27) for Summary Judgment, Defendant's Cross-Motion (#31) for Summary Judgment, and Plaintiff's Motion (#46) for Leave to File Second Amended Complaint.

For the reasons that follow, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment on the ground that the record reflects Plaintiff has not been made whole.  The Court also **GRANTS** Plaintiff's Motion for Leave to file Second Amended Complaint and deems Plaintiff's proposed Second Amended Complaint filed as of October 19, 2009.


## BACKGROUND

On June 4, 2007, Plaintiff Katherine Cavanaugh suffered injuries in an automobile accident with a third party.  Plaintiff received medical treatment, which was paid for in part by health insurance provided by Defendant Providence Health Plan as a benefit of her mother's employment with Providence Health System Oregon.

On August 16, 2007, Defendant sent a letter to the third party's insurance company in which Defendant advised:

> As you know, ORS 742.534 requires an authorized
> motor vehicle liability insurer, whose insured is
> or would be held legally liable for damages to

2 - OPINION AND ORDER

> reimburse the health insurer directly for the
> benefits the health insurer has so furnished
> . . . . This letter will serve as Providence
> Health Plan's demand under that statute for direct
> insurer to insurer reimbursement.

Decl. of Samuel T. Stanke, Ex. 1.

On February 29, 2008, Defendant sent a second letter to the

third party's insurance company in which Defendant advised:

> I wrote you on August 16 and informed you that
> Providence had made our formal demand to you for
> claims we have paid that are related to the above
> accident. . . . As you know, ORS 742.534 requires
> an authorized motor vehicle liability insurer,
> whose insured is or would be held legally liable
> for damages to reimburse the health insurer
> directly for the benefits the health insurer has
> so furnished. Our August letter to you served as
> Providence Health Plan's demand under that statute
> for direct insurer to insurer reimbursement. We
> have paid a total of $58,161.33 to date, in
> related claims.

Stanke Decl., Ex. 2. Defendant evidently did not pursue its

rights under Oregon Revised Statute § 742.534 any further and, in

any event, never received any direct reimbursement from the third

party's insurance company.

On May 22, 2008, Plaintiff filed an action in Multnomah

County Circuit Court against Plaintiff's own auto insurer for

uninsured motorist benefits (UIM) and against the third party and

others allegedly liable for her injuries (*Cavanaugh v. Geico

Casualty Co. et al.,* Case No. 0805-07549). Plaintiff served

Defendant with notice of the action on May 27, 2008.

On August 15, 2008, Plaintiff reached a tentative settlement

with the third party for the benefits available under the third
party's vehicle insurance policy.  On September 12, 2008,
Plaintiff reached a tentative agreement with her auto insurer to
settle her claim for the maximum amount of UIM benefits available
under her policy less the amount recovered from the third party's
insurer.  As a result, Plaintiff would receive $100,000 from
these settlements.

Before seeking the state court's approval of the settlements
in *Cavanaugh v. Geico*, Plaintiff asked Defendant to concede that
it did not have a valid lien against the settlement amounts
because (1) it had elected direct reimbursement under Oregon
Revised Statute § 742.534 and (2) it did not give written notice
of its election to seek reimbursement by lien within 30 days of
May 27, 2008 (the date Plaintiff served Defendant with notice of
*Cavanaugh v. Geico*) as required by § 742.536.  Defendant refused
to concede it did not have the right to assert a lien.

On October 28, 2008, Plaintiff filed a declaratory-judgment
action in Multnomah County Circuit Court in which she sought a
declaration that any lien Defendant claimed on the amount
Plaintiff has recovered or will recover in *Cavanaugh v. Geico* is
invalid because Defendant did not comply with § 742.536.
Plaintiff also sought a declaration that to the extent
Defendant's Plan contains the following provision, it is void and
unenforceable under Oregon Revised Statute § 742.021 as "less

4 - OPINION AND ORDER

favorable to the insured" than the applicable provisions of the Oregon Insurance Code:  "[Plaintiff is] obligated to pay for any future medical needs related to the accident out of any proceeds she receives from the insurance available here, and only after that will Providence's coverage resume paying for any related claims."

On November 14, 2008, Defendant removed Plaintiff's declaratory-judgment action to this Court on the basis of complete preemption under § 1132(a)(1)(B) of the Employee Retirement Income Security Act (ERISA).

On December 8, 2008, Plaintiff filed a Motion to Remand this matter to Multnomah County Circuit Court on the ground that ERISA does not completely preempt this matter, and, therefore, this Court lacks jurisdiction.

On April 15, 2009, the Court issued an Opinion and Order in which it concluded ERISA does not preempt Plaintiff's claim that Defendant's lien on the amount Plaintiff has recovered or will recover in *Cavanaugh v. Geico* is invalid because Defendant did not comply with § 742.536.  The Court, however, found ERISA preempted Plaintiff's claim that certain provisions of Defendant's Plan are void and unenforceable under Oregon Revised Statute § 742.021 as "less favorable to the insured" than the applicable provisions of the Oregon Insurance Code because

> § 742.021 requires that the terms of insurance
> policies cannot be less favorable to the insured

> than provisions of the Oregon Insurance Code.  To
> decide Plaintiff's claim would require a compari-
> son of the terms of Plaintiff's ERISA Plan to the
> requirements of the Oregon Insurance Code and a
> determination as to whether the terms of the Plan
> are "less favorable."  Plaintiff's claim as to
> § 742.021 also has a connection with an ERISA plan
> because adjudication of this claim would require
> the Court to interpret the terms of the Plan and
> to compare them to the requirements of the Oregon
> Insurance Code.

Opin. and Order at 20 (issued Apr. 15, 2009).  Thus, for purposes

of removal jurisdiction, the Court found this aspect of

Plaintiff's claim was preempted, and, therefore, the matter was

properly removed to this Court.

On July 15, 2009, Plaintiff filed an Amended Complaint to

amend the case caption to remove Plaintiff's guardian *ad litem*

and to reflect that Plaintiff had obtained the age of majority.

On July 30, 2009, Defendant filed an Answer to First Amended

Complaint, Affirmative Defense & Counterclaims in which it

asserts five Counterclaims and seeks, among other things, (1) a

declaration that under the terms of the Plan "plaintiff is

required to reimburse the [P]lan for benefits provided on account

of the negligence of a third party, and to pay for future medical

costs, if any, out of any recovery obtained from the third

party"; (2) "recovery of monies pursuant to a constructive trust"

for the amount of benefits Defendant has paid Plaintiff to date

"less a reasonable amount equal to plaintiff's out-of-pocket

expenses . . . in obtaining the Recovery"; and (3) damages based

6 - OPINION AND ORDER

on state-law breach of contract. Defendant requests the Court,
among other things, to

> [d]eclare that (a) Providence's lack of success in
> enforcing its rights against plaintiff directly
> against the motor vehicle carriers identified in
> paragraph 5 of plaintiff's complaint in no way
> impaired Providence's right to collect from
> plaintiff under the terms of the plan;
> (b) Providence's decision not to elect to enforce
> its rights under ORS 742.536 in no way impaired
> Providence's right to collect from plaintiff under
> the terms of the plan; and (c) Nothing in ORS
> 742.538 impairs the reimbursement terms of an
> ERISA plan, which are enforceable under federal
> law;
>
> Order plaintiff to hold $87,185.31, or such
> other amount as may be shown at trial to have been
> paid by Providence on her behalf, less a reason-
> able amount equal to plaintiff's out-of-pocket
> expenses, if any, in obtaining the Recovery, in
> trust for Providence, and to pay such funds over
> to Providence in accord with the terms of the
> plan, plus statutory prejudgment interest;
>
> In the alternative, enter judgment in
> Providence's favor in the amount of $87,185.31, or
> such other amount as may be shown at trial to have
> been paid by Providence on her behalf, less a
> reasonable amount equal to plaintiff's out-of-
> pocket expenses, if any, in obtaining the
> Recovery, as damages for breach of plaintiff's
> contract obligation to fulfill her obligations
> under the terms of the plan.

On August 14, 2009, Plaintiff moved for summary judgment as
to all of her claims as well as Defendant's Counterclaims on the
grounds that (1) Defendant failed to give written notice of an
election to proceed under either Oregon Revised Statute § 742.536
or § 742.538, and, therefore, Defendant waived any lien against
Plaintiff's UIM and third-party recoveries; (2) in the

7 - OPINION AND ORDER

alternative, Defendant cannot enforce a lien against Plaintiff's recoveries because those recoveries have not made Plaintiff whole; and (3) the "exhaustion clause" in the Plan is less favorable than the Oregon Insurance Code, and, therefore, the exhaustion clause of the Plan is invalid under § 742.021.

On September 10, 2009, Defendant filed a Cross-Motion for Summary Judgment as to the above Counterclaims and seeks an order

> [d]eclaring that (a) Providence's lack of success in enforcing its rights against plaintiff directly against the motor vehicle carriers identified in paragraph 5 of plaintiff's complaint in no way impaired Providence's right to collect from plaintiff under the terms of the plan; (b) Providence's decision not to elect to enforce its rights under ORS 742.536 in no way impaired Providence's right to collect from plaintiff under the terms of the plan; and (c) Nothing in ORS 742.538 impairs the reimbursement terms of an ERISA plan, which are enforceable under federal law;
>
> [o]rdering plaintiff to hold $89,089.37, or such other amount as may be shown at trial to have been paid by Providence on her behalf, less a reasonable amount equal to plaintiff's out-of-pocket expenses, if any, in obtaining the Recovery, in trust for Providence, and to pay such funds over to Providence in accord with the terms of the plan, plus statutory prejudgment interest;
>
> In the alternative, enter judgment in Providence's favor in the amount of $89,089.37, or such other amount as may be shown at trial to have been paid by Providence on her behalf, less a reasonable amount equal to plaintiff's out-of-pocket expenses, if any, in obtaining the Recovery, as damages for breach of plaintiff's contract obligation to fulfill her obligations under the terms of the plan.

On October 7, 2009, Plaintiff filed a Motion for Leave to

8 - OPINION AND ORDER

File a Second Amended Complaint in which she seeks to amend her

First Amended Complaint

> to specifically allege that she has not been made
> whole for her damages arising from the June 4,
> 2007 car crash by the settlements she has
> recovered from the liability insurer for the at-
> fault driver and from her [UIM] carrier, and to
> specifically allege that defendant failed to
> properly elect reimbursement by "subrogation"
> under ORS 742.538.

On November 19, 2009, Plaintiff filed a Motion for Leave to

File First Amended and Supplemental Complaint in which Plaintiff

sought leave to supplement her Complaint to allege Defendant

violated 29 U.S.C. §§ 1132(c)(1) and 1024(b)(4) when it failed to

provide Plaintiff with a copy of Document 36-1 (the Providence

Health System-Oregon Employee Health Plan) within 30 days of

Plaintiff's written request for a complete copy of the Plan.

On December 18, 2009, the Court held oral argument on

Plaintiff's Motion for Leave to File a Second Amended Complaint

and Motion for Leave to File First Amended and Supplemental

Complaint.  The Court granted Plaintiff's Motion for Leave to

File First Amended and Supplemental Complaint and took

Plaintiff's Motion for Leave to File a Second Amended Complaint

under advisement.


### PARTIES' MOTIONS FOR SUMMARY JUDGMENT

As noted, Plaintiff moves for summary judgment as to all of

her claims and Defendant's Counterclaims.  Defendant moves for

9 - OPINION AND ORDER

summary judgment as to its Counterclaims for declaratory relief, constructive trust, and breach of contract.

## Standards

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## Discussion

### I. Oregon Revised Statutes §§ 742.536 and 742.538 do not preclude Defendant's right to seek reimbursement under the terms of the Plan.

Oregon Revised Statutes §§ 742.534, 742.536, and 742.538 address three alternate methods by which an insurer that has provided benefits for an insured who has been injured in a motor-vehicle accident may seek to be reimbursed for those benefits. Under § 742.534, the insurer may seek such reimbursement directly from the liability insurer of the tortfeasor who is liable to the insured. Under § 742.536, the insurer may obtain a lien on any

recovery its insured receives from the tortfeasor.  Under

§ 742.538, the insurer may exercise a right of subrogation to any

proceeds its insured receives from settlement with the tortfeasor

or obtains from any judgment against the tortfeasor.  Each of

these three statutory options is subject to conditions the

insurer must meet in order to exercise its rights.

As noted, Defendant initially sought direct reimbursement

for Plaintiff's medical expenses from the third party's insurer

pursuant to Oregon Revised Statute § 742.534(1), which provides

in pertinent part:

> [E]very authorized motor vehicle liability insurer
> whose insured is or would be held legally liable
> for damages for injuries sustained in a motor
> vehicle accident by a person . . . for whom
> benefits have been furnished by an authorized
> health insurer, shall reimburse such other insurer
> for the benefits it has so furnished if it has
> requested such reimbursement, has not given notice
> as provided in ORS 742.536 that it elects recovery
> by lien in accordance with that section and is
> entitled to reimbursement under this section by
> the terms of its policy.

The third party's insurer, however, failed to reimburse Defendant

and it does not appear Defendant took any further action to

enforce its rights against that insurer.

Defendant then attempted to enforce a lien or a right to

subrogation directly from Plaintiff.  As noted, Oregon Revised

Statutes §§ 742.536 and 742.538 address these avenues of

reimbursement.

Oregon Revised Statute § 742.536(1) and (2) provide in

12 - OPINION AND ORDER

pertinent part:

>(1) When . . . an authorized health insurer has furnished benefits, for a person injured in a motor vehicle accident, if such injured person makes claim, or institutes legal action, for damages for such injuries against any person, such injured person shall give notice of such claim or legal action to the insurer by personal service or by registered or certified mail.

>* * *

>(2) The insurer may elect to seek reimbursement as provided in this section for benefits it has so furnished . . . if the insurer has not been a party to an interinsurer reimbursement proceeding with respect to such benefits under ORS 742.534 and is entitled by the terms of its policy to the benefit of this section.  The insurer shall give written notice of such election within 30 days from the receipt of notice or knowledge of such claim or legal action to the person making claim or instituting legal action and to the person against whom claim is made or legal action instituted, by personal service or by registered or certified mail.

Oregon Revised Statute § 742.538(1) and (4) provide in pertinent

part:

>If a motor vehicle liability insurer has furnished personal injury protection benefits, or a health insurer has furnished benefits, for a person injured in a motor vehicle accident, and the interinsurer reimbursement benefit of ORS 742.534 is not available under the terms of that section, and the insurer has not elected recovery by lien as provided in ORS 742.536, and is entitled by the terms of its policy to the benefit of this section:

>(1) The insurer is entitled to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of the injured person against any person legally responsible for the accident, to the extent of such benefits

13 - OPINION AND ORDER

furnished by the insurer less the insurer's share
of expenses, costs and attorney fees incurred by
the injured person in connection with such
recovery.

* * *

(4) If requested in writing by the insurer, the
injured person shall take, through any
representative not in conflict in interest with
the injured person designated by the insurer, such
action as may be necessary or appropriate to
recover such benefits furnished as damages from
such responsible person, such action to be taken
in the name of the injured person, but only to the
extent of the benefits furnished by the insurer.
In the event of a recovery, the insurer shall also
be reimbursed out of such recovery for the injured
person's share of expenses, costs and attorney
fees incurred by the insurer in connection with
the recovery.

Plaintiff contends Defendant "waived any reimbursement
rights against [P]laintiff . . . by failing to give the written
notice required by ORS 742.536 and 742.538."  Although it is
undisputed that Defendant did not perfect a right to
reimbursement under §§ 742.534, 742.536, or 742.538, Defendant,
nonetheless, contends it did not waive its right to seek
reimbursement because it retained that right under the following
provisions of the Plan:

By accepting membership in the Plan, you make an
agreement with us – if you receive a settlement
for an illness or injury, you must pay us back for
the cost of your treatment.
*Example:  You are injured while on a weekend visit
to a coastal resort. You sue, and are awarded
$7,500 plus attorney's fees.  Meanwhile, the Plan
has paid a total of $6,000 for treatment of your
injury, so you must reimburse us for $6,000 out of
your settlement.*

14 - OPINION AND ORDER

> Before you accept any settlement, you must let us
> know the terms, and tell the third party that we
> have an interest in the settlement.  If you have
> medical bills after your (*sic*) receive a
> settlement, we will not pay those bills until your
> settlement is exhausted.

Decl. of Kathleen Warren, Ex. 2 at 43 (emphasis in original).

According to Defendant, §§ 742.536 and 742.538 are merely

supplemental remedies available to enforce an ERISA plan, and,

therefore, those statutes do not limit Defendant's remedies under

its ERISA Plan.  Accordingly, Defendant asserts ERISA preempts

those statutes to the extent that they attempt to limit

Defendant's right to seek reimbursement under the Plan.

**A.    ERISA preemption**

In *Aetna Healthcare v. Davila*, the Supreme Court

explained ERISA preemption as follows:

> Congress enacted ERISA to "protect . . . the
> interests of participants in employee benefit
> plans and their beneficiaries" by setting out
> substantive regulatory requirements for employee
> benefit plans and to "provid[e] for appropriate
> remedies, sanctions, and ready access to the
> Federal courts."  29 U.S.C. § 1001(b).  The
> purpose of ERISA is to provide a uniform
> regulatory regime over employee benefit plans.
> To this end, ERISA includes expansive pre-emption
> provisions, *see* ERISA § 514, 29 U.S.C. § 1144,
> which are intended to ensure that employee benefit
> plan regulation would be "exclusively a federal
> concern."  *Alessi v. Raybestos-Manhattan, Inc.*,
> 451 U.S. 504, 523 (1981).
>
> ERISA's "comprehensive legislative scheme"
> includes "an integrated system of procedures for
> enforcement."  *Russell*, 473 U.S., at 147 (internal
> quotation marks omitted).  This integrated
> enforcement mechanism, ERISA § 502(a), 29 U.S.C.

15 - OPINION AND ORDER

> § 1132(a), is a distinctive feature of ERISA.
>
>             * * *
>
> Therefore, any state-law cause of action that
> duplicates, supplements, or supplants the ERISA
> civil enforcement remedy conflicts with the clear
> congressional intent to make the ERISA remedy
> exclusive and is therefore pre-empted. *See* 481
> U.S. at 54-56; *see also Ingersoll-Rand Co. v.
> McClendon*, 498 U.S. 133, 143-145 (1990).

542 U.S. 200, 208 (2004).

ERISA's preemption provision provides ERISA shall generally "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."  29 U.S.C. § 1144(a).

"Generally speaking, a common law claim relates to an employee benefit plan governed by ERISA if it has a *connection with* or *reference to* such a plan."  *Providence Health Plan v. McDowell,* 385 F.3d 1168, 1172 (9th Cir. 2004)(quotations omitted; emphasis added).

"In determining whether a claim has a 'connection with' an employee benefit plan, courts in [the Ninth Circuit] use a relationship test.  Specifically, the emphasis is on the genuine impact that the action has on a relationship governed by ERISA, such as the relationship between the plan and a participant."  *Id.* (citing *Abraham v. Norcal Waste Sys., Inc.*, 265 F.3d 811, 820-21 (9th Cir. 2001)).  "In evaluating whether a common law

16 - OPINION AND ORDER

claim has 'reference to' a plan governed by ERISA, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival.  If so, a sufficient 'reference' exists to support preemption."  *Id*. (citations omitted).

**B.    ERISA preempts Plaintiff's claims involving §§ 742.536 and 742.538.**

As noted, Defendant contends even though it did not perfect its right to reimbursement under any provision of Oregon Revised Statutes chapter 742, it may seek reimbursement under the provisions of the Plan because ERISA preempts the provisions of chapter 742 to the extent that they attempt to limit an ERISA plan's ability to enforce its terms.  Plaintiff, however, points out that the Court previously concluded in its April 15, 2009, Opinion and Order that ERISA does not preempt § 742.536. According to Plaintiff, therefore, Defendant may seek a lien only if it complies with the terms of chapter 742.

As a preliminary matter, the Court notes in its April 15, 2009, Opinion and Order it addressed the issue of ERISA preemption as to § 742.536 only for the purpose of determining whether the matter was properly removed to this Court.  On the issue of removal, the Court concluded § 742.536 does not on its face require an insurer to proceed only under the provisions of that section to seek a lien, and, therefore, it does not limit an ERISA plan's rights under its plan.  Specifically, the Court

17 - OPINION AND ORDER

concluded:  "To determine whether Defendant complied with the requirements of § 742.536 and whether compliance with § 742.536 is the only mechanism for obtaining a lien under state law, the Court is not required to review the Plan terms."  Accordingly, the Court concluded for removal purposes only that ERISA does not preempt § 742.536 as that issue was framed in Plaintiff's claim at the time of removal.  Now at summary judgment, however, Plaintiff requests the Court to declare that Defendant may only seeks a lien under § 742.536 and/or 742.538 rather than proceeding on the basis of the provisions of its ERISA plan. Accordingly, the present issue before the Court is whether compliance with the provisions of chapter 742 is the only mechanism for an ERISA plan to obtain a lien even if the ERISA plan contains a lien provision with its own requirements that are separate and apart from the provisions of Oregon statutes.  Thus, the Court must address whether ERISA preempts §§ 742.736 and 742.538 as Plaintiff frames its claims for purposes of summary judgment.

Defendant relies on *FMC Corporation v. Holliday*, 498 U.S. 52 (1990), to support its assertion that Plaintiff's claims involving §§ 742.536 and 742.538 are preempted by ERISA as they are now framed for purposes of summary judgment.  In *FMC*, the plaintiff was injured in an automobile accident, and the defendant, a self-funded welfare-benefit plan, paid a portion of

18 - OPINION AND ORDER

the plaintiff's medical expenses.  498 U.S. at 55.  The plaintiff
brought a negligence action in state court against the other
driver.  *Id*.  While the state action was pending, the defendant
notified the plaintiff that it would seek reimbursement for the
amounts it had paid for the plaintiff's medical expenses pursuant
to the terms of the benefit plan.  *Id*.  The plaintiff refused to
reimburse the defendant on the ground that the Pennsylvania Motor
Vehicle Financial Responsibility Law (MVFRL) precluded
subrogation by the defendant.  *Id*.  The defendant sought a
declaratory judgment in federal court.  The district court
concluded the MVFRL prohibited the defendant from exercising its
subrogation rights.  *Id*. at 56.  The Third Circuit affirmed the
district court's conclusion that ERISA did not preempt the MVFRL.
*Id.*  The Supreme Court, however, concluded ERISA preempted
application of the MVFRL in that case.  *Id*. at 65.  The Court
reasoned:

> Three provisions of ERISA speak expressly to the
> question of pre-emption:
>
> "Except as provided in subsection (b) of this
> section [the saving clause], the provisions of
> this subchapter . . . shall supersede any and all
> State laws insofar as they may now or hereafter
> relate to any employee benefit plan." § 514(a),
> as set forth in 29 U.S.C. § 1144(a) (pre-emption
> clause).
>
> "Except as provided in subparagraph (B) [the
> deemer clause], nothing in this subchapter shall
> be construed to exempt or relieve any person from
> any law of any State which regulates insurance,
> banking, or securities." § 514(b)(2)(A), as set

forth in 29 U.S.C. § 1144(b)(2)(A) (saving clause).

"Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer . . . or to be engaged in the business of insurance . . . for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts."  § 514(b)(2)(B), 29 U.S.C. § 1144(b)(2)(B) (deemer clause).

*Id*. at 57.  The Court summarized these provisions as follows:

The pre-emption clause . . . establishes as an area of exclusive federal concern the subject of every state law that "relate[s] to" an employee benefit plan governed by ERISA.  The saving clause returns to the States the power to enforce those state laws that "regulat[e] insurance," except as provided in the deemer clause.  Under the deemer clause, an employee benefit plan governed by ERISA shall not be "deemed" an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws "purporting to regulate" insurance companies or insurance contracts.

*Id*. at 58.  The Court concluded the MVFRL had "reference to"

benefit plans governed by ERISA because the MVFRL provides in

pertinent part:

In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to . . . benefits . . . paid or payable [by] . . . [a]ny program, group contract or other arrangement for payment of benefits [including] . . . benefits payable by a hospital plan corporation or a professional health service corporation.

*Id*. at 59 (quotations omitted).  The Court also concluded the

MVFRL had a "connection to" ERISA benefit plans because it

subjects plan administrators to conflicting state regulations;

20 - OPINION AND ORDER

specifically, it "prohibits plans from being structured in a manner requiring reimbursement in the event of a recovery from a third-party [and, therefore,] requires plan providers to calculate benefit levels in Pennsylvania based on expected liability conditions that differ from those in States that have not enacted similar antisubrogation legislation." *Id*. at 59-60. The Court, therefore, concluded the MVFRL "relates to" an ERISA plan. *Id*. at 59.  The Court also concluded the MVFRL "falls within ERISA's . . . saving clause" because "[i]t does not merely have an impact on the insurance industry; it is aimed at it." *Id*. at 61 (citation omitted).  Thus, the savings clause "returns the matter of subrogation to state law[, and, therefore, the MVFRL is not preempted]. . . [u]nless the statute is excluded from the reach of the saving clause by virtue of the deemer clause." *Id*.  Turning to application of the deemer clause, the Court concluded the deemer clause "exempt[s] self-funded ERISA plans from state laws that 'regulate insurance' within the meaning of the saving clause . . . [and, therefore,] . . . relieves [self-insured] plans from state laws purporting to regulate insurance." *Id*.  The Court summarized:

> As a result, . . . State laws directed toward the plans are pre-empted because they relate to an employee benefit plan but are not "saved" because they do not regulate insurance.  State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the

> business of insurance for purposes of such state
> laws.  On the other hand, employee benefit plans
> that are insured are subject to indirect state
> insurance regulation. . . .  The ERISA plan is
> consequently bound by state insurance regulations
> insofar as they apply to the plan's insurer.

*Id.*

The Court recognized its decision "results in a distinction between insured and [self-insured] plans, leaving the former open to indirect regulation while the latter are not," but noted it was "merely giv[ing] life to a distinction created by Congress in the 'deemer clause,' a distinction Congress is aware of and one it has chosen not to alter."  *Id.* at 62 (quotation omitted).  Because the plan at issue in *FMC* was self-insured and the MVFRL "related to" an ERISA plan, the Court concluded ERISA preempted application of the MVFRL, and, therefore, § 1144(a) of ERISA preempted the plaintiff's claim.  *Id.* at 64.

Here it is undisputed that Defendant is a self-funded or self-insured ERISA plan.  According to Defendant, therefore, Plaintiff's claims involving §§ 742.536 and 742.538 as they are currently framed for purposes of summary judgment are preempted by § 1144(a) of ERISA as set out in *FMC Corporation*.

The Ninth Circuit has held a state-law claim "relates to an employee benefit plan governed by ERISA if it has a *connection with* or *reference to* such a plan."  *Providence Health Plan*, 385 F.3d at 1172 (quotations omitted; emphasis added).

22 - OPINION AND ORDER

> **1.    Plaintiff's claims involving §§ 742.536 and 742.538 "refer to" a plan governed by ERISA.**

A claim "refers to" a plan governed by ERISA if the "claim is premised on the existence of an ERISA plan, and . . . the existence of the plan is essential to the claim's survival," *id.*, or it "act[s] immediately and exclusively upon an ERISA plan." *Abraham v. Norcal Waste Syst., Inc.*, 265 F.3d 811, 820 (9th Cir. 2001).

The Court finds Plaintiff's claims as to §§ 742.536 and 742.538 as they are currently framed "act immediately and exclusively" on Defendant's ERISA Plan because Plaintiff requests the Court to declare that Defendant must seek any lien or reimbursement under the provisions of chapter 742 and is precluded from seeking such a lien or reimbursement under the provisions of the Plan.  Such a declaration would result in Defendant continuing to distribute benefits to Plaintiff without any right to reimbursement.  *See Providence*, 385 F.3d at 1172. The Court, therefore, concludes Plaintiff's claims involving §§ 742.536 and 742.538 "refer to" an ERISA plan.

> **2.    Plaintiff's claims involving §§ 742.536 and 742.538 have a connection with a plan governed by ERISA.**

A state law has a connection with an ERISA plan if the state law risks "subjecting plan administrators to conflicting state regulations." *FMC*, 498 U.S. at 59.  In

23 - OPINION AND ORDER

*Abraham*, the Ninth Circuit identified three traditional areas of preemption:

> [S]tate laws that: (1) mandate employee benefit structures or their administration; (2) bind employers or plan administrators to particular choices or preclude uniform administrative practice; and (3) provide alternative enforcement mechanisms to obtain ERISA plan benefits.

265 F.3d at 820, n.6 (citing *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1217 (9th Cir. 2000)).

As Plaintiff's claims are currently framed, Plaintiff seeks a declaration that would bind Defendant, an ERISA plan administrator, to "particular choices" for seeking a lien or reimbursement; *i.e.*, Defendant could only seek a lien or reimbursement under the provisions of chapter 742 rather than under the provisions of the Plan. The Court, therefore, concludes Plaintiff's claims involving §§ 742.536 and § 742.538 have "a connection with" an ERISA plan.

Because Plaintiff's claims as to §§ 742.536 and 742.538 as they are currently framed have "reference to" and a "connection with" an ERISA plan, the Court concludes Plaintiff's claims as to §§ 742.536 and 742.538 are "related to" an ERISA plan. Thus, Plaintiff's claims involving §§ 742.536 and 742.538 are completely preempted under ERISA.

### 3.    *Mid-Century* does not address ERISA preemption.

In any event, Plaintiff relies on *Mid-Century Insurance Company v. Turner* to support its contention that

24 - OPINION AND ORDER

Defendant may not seek a lien or reimbursement under the terms of its Plan.  In that case the court held:

> Because we have construed the contract in accordance with [Oregon Revised Statute §§ 742.534, 742.536, and 742.538,] we must conclude that defendant's "fiduciary" duties . . . are coextensive with defendant's duties under ORS 742.536 and ORS 742.538, to protect its insurer's interests if the insurer takes the appropriate steps under one of those statutes to assert lien or subrogation rights.  In the absence of the insurer taking appropriate steps to assert its rights-and plaintiff has conceded that it did not proceed under either ORS 742.536 or ORS 742.538 in the present case-the insured has no "fiduciary" duty to hold any recovery in trust for the insurer.

219 Or. App. 44, 61 (2008).  In *Mid-Century*, the defendant had an automobile insurance policy with the plaintiff that included personal-injury protection (PIP) benefits.  *Id*. at 46.  The defendant was injured in an automobile accident; pursued a claim for damages against the tortfeasor's insurance company, USAA; and informed the defendant that she was pursuing a claim against USAA.  *Id*. at 47.  The plaintiff made a claim against the tortfeasor on behalf of the defendant for economic damages for "un-reimbursed past medical expenses and future expenses."  *Id*. at 48.  Without any involvement by the plaintiff, USAA settled with the defendant and made a payment to the defendant's attorney.  *Id*.  Ten months later USAA received a notice of an arbitration hearing concerning a claim for interinsurer PIP reimbursement filed by the plaintiff pursuant to Oregon Revised

Statute § 742.534.  *Id*.  When USAA requested the plaintiff to
withdraw its claim for arbitration due to settlement of the
matter, the plaintiff filed an action against defendant for,
among other things, breach of fiduciary duty "based solely on the
premise that defendant had prejudiced plaintiff's right to direct
interinsurer reimbursement from USAA pursuant to ORS 742.534."
*Id*.  The court noted the defendant's policy provided it had the
right to seek reimbursement and "the right to assert each of the
remedies provided by Oregon Revised Statutes ORS 742.534, ORS
742.536, and ORS 742.538."  *Id*. at 53.  The policy also provided:

> In the event of any payment under this policy we
> are entitled to all the rights of recovery of the
> person to whom payment was made against another.
> That person must . . . do whatever . . . is
> necessary to help us exercise those rights *and do
> nothing after loss to prejudice our rights*.

*Id*. at 55 (emphasis in original).  The court noted the Oregon
Insurance Code did not contain any "corresponding language *viz*
'shall do nothing to prejudice' the insurer's 'rights.'"  *Id*.
The appellate court concluded the trial court properly rejected
the plaintiff's breach-of-fiduciary-duty claim.  The court
reasoned plaintiff's claim "rests on plaintiff's assertion . . .
that the insurance contract gave plaintiff superior right to
recovery of PIP benefits from its insured than those contemplated
by the PIP reimbursement statutes" in violation of Oregon Revised
Statute § 742.021, which prohibits insurers from including
provisions in plans that are less favorable than the provisions

26 - OPINION AND ORDER

of the Oregon Insurance Code.  *Id*. at 61.

            In *Mid-Century*, however, the parties did not raise

and the court did not address whether ERISA preempts the

requirement that an insurance company's plan provisions cannot be

less favorable than provisions of the Oregon Insurance Code.

Moreover, this Court concluded in its April 15, 2009, Opinion and

Order that ERISA preempts § 742.021 as to Defendant's

reimbursement and subrogation provisions because

            § 742.021 requires that the terms of insurance
            policies cannot be less favorable to the insured
            than provisions of the Oregon Insurance Code.  To
            decide Plaintiff's claim would require a
            comparison of the terms of Plaintiff's ERISA Plan
            to the requirements of the Oregon Insurance Code
            and a determination as to whether the terms of the
            Plan are "less favorable."  Plaintiff's claim as
            to § 742.021 also has a connection with an ERISA
            plan because adjudication of this claim would
            require the Court to interpret the terms of the
            Plan and to compare them to the requirements of
            the Oregon Insurance Code.

Opin. and Order at 20 (issued Apr. 15, 2009).  On this record,

the Court does not find any reason to alter its conclusion that

ERISA preempts § 742.021 under the circumstances of this case.

            In summary, the Court concludes Plaintiff's claims

involving §§ 742.536 and 742.538 as they are currently framed are

preempted by ERISA because they are related to and have a

connection with Defendant's ERISA plan, and, therefore, Defendant

is not precluded from seeking a lien or reimbursement under the

terms of its Plan even though it failed to perfect any right of

27 - OPINION AND ORDER

reimbursement under the provisions of chapter 742.

## II.  **The Made-Whole Rule.**

Plaintiff contends even if Defendant relies on the subrogation provision in its Plan, Defendant may not recover its lien at this time because Plaintiff has not been made whole by her recoveries.

### A.  **The Rule.**

In *Barnes v. Independent Auto Dealers Association of California Health and Welfare Benefit Plan*, the Ninth Circuit adopted the "generally accepted rule that, in the absence of a clear contract provision to the contrary, an insured must be made whole before an insurer can enforce its right to subrogation." 64 F.3d 1389, 1394 (9th Cir. 1995).  The Ninth Circuit noted

> [i]t is a general equitable principle of insurance law that, absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole.  *See Fields v. Farmers Ins. Co.*, 18 F.3d 831, 835 (10th Cir. 1994)(diversity case listing jurisdictions following the rule); *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 39 (11th Cir. 1989)(ERISA case noting that subrogation right not mature until insured is reimbursed for loss).  The [made-whole] principle
>
> is a rule of interpretation.  No one doubts that the beneficiary of an insurance policy or (as here) an employee welfare or benefits plan can if he wants sign away his [made-whole] right.  The right exists only when the parties are silent. It is a gap filler.

*Id*. (quoting *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1297

(7th Cir. 1993)).

The Ninth Circuit concluded it "would not apply the interpretive [made-whole] rule as a 'gap-filler' if the subrogation clause in the plan document specifically allowed the plan the right of first reimbursement out of any recovery [the insured] was able to obtain even if [the insured] were not made whole." *Id*. at 1395. The Ninth Circuit applied the made-whole rule in *Barnes* because the plan at issue in that case did not contain such a provision.

**B.   Collateral estoppel pursuant to *Simnett*.**

Here Defendant asserts the Plan includes a subrogation clause that specifically allows Defendant the right of first reimbursement out of any recovery that Plaintiff receives. Specifically, Defendant relies on the following Plan language:

> By accepting membership in the Plan, you make an agreement with us – if you receive a settlement for an illness or injury, you must pay us back for the cost of your treatment.
> *Example:  You are injured while on a weekend visit to a coastal resort. You sue, and are awarded $7,500 plus attorney's fees.  Meanwhile, the Plan has paid a total of $6,000 for treatment of your injury, so you must reimburse us for $6,000 out of your settlement.*
>
> Before you accept any settlement, you must let us know the terms, and tell the third party that we have an interest in the settlement.  If you have medical bills after your (*sic*) receive a settlement, we will not pay those bills until your settlement is exhausted.

Decl. of Kathleen Warren, Ex. 2 at 43 (emphasis in original).

Plaintiff, in turn, asserts the language relied on by Defendant is not sufficiently clear to "displace the default rule that an insured must be made whole before an insurer can seek reimbursement." *See Providence Health Plan of Or. v. Simnett*, Civil No. 08-44-HA, 2009 WL 700873, at *8 (D. Or. Mar. 13, 2009). Plaintiff relies on *Simnett* to support her assertion.

In *Simnett* the defendant, a participant in the plaintiff's benefit plan, was injured in a car accident. The plaintiff paid $143,194.69 for the defendant's medical care. The defendant subsequently recovered $25,000 from the tortfeasor and $250,000 from her own UIM policy. The plaintiff brought an action seeking reimbursement of the $143,194.69 that it paid for the defendant's medical care pursuant to a subrogation clause in its plan. *Id*., at *1-3. The defendant asserted she had not been "made whole" by her recoveries, and, therefore, the plaintiff was not entitled to reimbursement for the defendant's medical expenses. *Id*., at *8. The plaintiff asserted the following provision of the plan precluded application of the made-whole rule and provided the plaintiff with the right of first reimbursement from any recovery by a plan member: "By accepting membership in the Plan, you make an agreement with us - if you receive a settlement for an illness or injury, you must pay us back for the cost of your treatment." *Id*. The court examined the decisions of numerous courts that had evaluated similar

language in plan documents to determine whether it was
"sufficiently clear to displace the default rule that an insured
must be made whole before an insurer can seek reimbursement."
The court concluded the provision in the plaintiff's plan was
"insufficient to disavow the made whole doctrine. . . . [T]he
subrogation language stating a participant 'must pay the [plan]
back' for medical expenses is insufficiently clear to defeat the
presumption that the made whole rule applies." *Id.*, at *9.
Accordingly, the court concluded the defendant was entitled to be
made whole before the plaintiff could seek reimbursement. *Id*.

          Plaintiff notes Providence Health Plan, Defendant in
this case, was the plaintiff in *Simnett*. Thus, the provision
relied on by Providence Health Plan in this case to establish
that it disavowed the made-whole rule is the same provision the
*Simnett* court concluded did not disavow the made-whole rule.
Plaintiff, therefore, asserts Defendant is collaterally estopped
from asserting that its Plan disavows the made-whole rule.

     **C.   Application of offensive collateral estoppel.**

          Defendant notes the Court has "broad discretion" in
determining when to apply offensive collateral estoppel. *See
Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979).
*See also Collins v. D.R. Horton, Inc,* 505 F.3d 874, 882 (9th Cir.
2007)(same).  When it "would be unfair to a defendant, a . . .
judge should not allow the use of offensive collateral estoppel."

31 - OPINION AND ORDER

*Id.  See also Collins,* 505 F.3d at 882 (same).  Defendant asserts
it would be unfair for this Court to allow Plaintiff to apply
offensive collateral estoppel as to whether Defendant's
subrogation language is sufficient to disavow the made-whole rule
because, according to Defendant, the *Simnett* court erred in its
analysis.

Specifically, Defendant contends the *Simnett* court
erroneously failed to recognize that interpretation of the plan
language is subject to review under the abuse-of-discretion
standard rather than the *de novo* standard when the plan
unambiguously confers discretionary authority on the plan
administrator to interpret the terms of the plan.  According to
Defendant, therefore, the *Simnett* court should have applied the
abuse-of-discretion standard when it interpreted the plan, and,
as a result, the court would have concluded the *Simnett* plaintiff
did not abuse its discretion when it interpreted the terms of its
plan to disavow the made-whole rule.  Because Defendant did not
appeal the court's ruling in *Simnett,* Defendant relies on *Barnes*
and *Cutting* to support its position.

The Ninth Circuit noted in *Barnes* that

> courts have upheld findings that a reference in a
> subrogation clause to "any" or "all" rights of
> recovery overrides the rule.  *See, e.g., Fields*,
> 18 F.3d at 835-36 ("any recovery" sufficient under
> Oklahoma law to abrogate [made-whole] rule);
> *Cutting*, 993 F.2d at 1299 (in ERISA case, not
> *unreasonable* to find that "all claims" language
> overrode [made-whole] rule).  In those cases,

> however, . . . the court avoided the determination
> whether the [made-whole] rule survived by
> deferring to the interpretation of the plan
> administrator, when the benefit plan, unlike the
> one in this case, gave the administrator
> discretion to interpret its provisions (*Cutting* ).
> *Cf. Guy*, 877 F.2d at 38-39 (applying [made-whole]
> rule to find that ERISA plan was arbitrary and
> capricious in withholding benefits, where
> subrogation clause referred to "any rights of
> recovery").

64 F.3d at 1396 (emphasis in original).  In *Cutting* the

defendant, an employee-benefits plan, demanded reimbursement from

the plaintiff for any amounts she had received from other sources

pursuant to a subrogation clause of the plan, which provided:

> [B]y accepting any payment of plan benefits the
> covered employee or dependent "agrees that the
> Plan shall be subrogated to all claims, demands,
> actions and rights of recovery of the individual
> against any third party or any insurer, including
> Workers' Compensation, to the extent of any and
> all payments made or to be made hereunder by the
> Plan."

993 F.2d at 1295.  The plaintiff refused to reimburse the

defendant on the ground that the defendant's right of subrogation

did not arise until the plaintiff had been made whole.  *Id*.  The

defendant then refused to pay the plaintiff further benefits.

The Seventh Circuit concluded the plaintiff was entitled to

judicial review of the defendant's decision based on an abuse-of-

discretion standard.  The court noted the plan contained a

provision reserving interpretation of the plan to the defendant

as follows:  "[A]ll decisions concerning the interpretation or

application of this Plan shall be vested in the sole discretion

33 - OPINION AND ORDER

of the Plan Administrator." *Id*. at 1295-96.  The Seventh Circuit

ultimately concluded it could not "say that the [defendant] was

*unreasonable* in interpreting this plan as disclaiming the made-

whole principle."

> Here the Plan provides in pertinent part:
>
> The Plan Administrator . . . shall have the
> authority to control and manage the operation of
> the Plan and shall have all powers necessary to
> accomplish those purposes.  The responsibility and
> authority of the Plan Administrator shall include,
> but not be limited to, the following:
>
> * * *
>
> (e)  Interpreting the provisions of the Plan
> and publishing such rules for the regulation of
> the Plan as are deemed necessary and not
> inconsistent with the terms of the Plan.

Warren Decl., Ex. 1 at 3.  This language unambiguously confers

discretionary authority on the Plan administrator to interpret

the terms of the Plan, and, therefore, the Court concludes it

must review Defendant's interpretation of the Plan terms based on

an abuse-of-discretion standard rather than *de novo*.  *See Abatie

v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir.

2006).  Because the *Simnett* court reviewed Defendant's plan *de

novo* rather than under an abuse-of-discretion standard, the

Court, in the exercise of its discretion, finds *Simnett* does not

directly apply here and, therefore, declines to apply offensive

collateral estoppel.

### D.    Abuse-of-discretion review of the Plan's subrogation provision.

34 - OPINION AND ORDER

As noted, the subrogation provision of Defendant's Plan provides in pertinent part: "By accepting membership in the Plan, you make an agreement with us – if you receive a settlement for an illness or injury, you must pay us back for the cost of your treatment." Kathleen Warren, a Financial Transaction Analyst for Providence Health Plan, testifies in her Declaration that Defendant interprets this provision "as meaning that a beneficiary must reimburse the Plan from any settlement proceeds the beneficiary receives, regardless of whether the beneficiary was made whole by the settlement." Warren Decl. at ¶ 3.

In *Providence Health System-Washington v. Bush*, the court addressed whether the made-whole rule applied to the plaintiff's right of reimbursement. 461 F. Supp. 2d 1226 (W.D. Wash. 2006). The plan contained the following provisions:

> Situations may arise in which health care expenses are also covered by a source other than the plan. If so, the plan won't provide benefits that duplicate the other coverage.
>
> * * *
>
> **Third-Party Liability** - If someone else is legally responsible or agrees to compensate you for injuries suffered by you or a family member, you will need to reimburse the plan for up to 100% of any benefits the plan paid in connection with those injuries. This reimbursement may be reduced in the same proportion by which the settlement, judgment or other recovery is reduced for payment of costs and attorneys' fees reasonably incurred in obtaining that recovery.
>
> **Recovery of Excess Payments** - Whenever payments have been made in excess of the amount necessary

35 - OPINION AND ORDER

to satisfy the provisions of this plan, the plan
has the right to recover those excess payments
from any individual, insurance company, or other
organization to whom the excess payments were
made.

*Id*. at 1234. The court concluded:

Nowhere in the plan language is there a
suggestion, let alone a clear statement, that a
plan beneficiary is signing away his or her [made-
whole] rights. Neither the [made-whole] doctrine
nor any euphemism sounding like the [made-whole]
doctrine is mentioned in the plan. Similarly,
application of the [made-whole] doctrine as a "gap
filler" would not contravene any statement from
the plan heretofore quoted to the Court by the
parties.

* * *

Neither the reference to reimbursement for "up to
100%" nor to "the plan won't provide benefits that
duplicate the other coverage" is inconsistent with
the proposition that a plan beneficiary reimburses
nothing until a settlement or payment from a third
party compensates the beneficiary for his/her
entire loss, including past and future medical
payments, past and future economic loss, and
general damages.

*Id*. at 1235. The plaintiff asserted "even if the plan's terms

are not clear, the [made-whole] rule still does not apply because

the plan administrator has determined that the language in the

plan excludes application of the doctrine." *Id*. Relying on the

Seventh Circuit's holding in *Cutting,* the plaintiff argued when

"the plan does give discretion to the plan administrator [as it

does here], then it should be the administrator who fills the

void and not the federal common law." *Id.* at 1236.

The Washington District Court disagreed:

> The rule advocated by counsel would give the plan administrator unfettered discretion to create terms and conditions never intended by the parties, no matter how unreasonable. While the discretion conferred upon the plan administrator is necessarily broad, it cannot be exercised in such a way as to abrogate important rights of the beneficiary without so much as a hint that the parties intended such an outcome.

> A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable. *G. Bogert & G. Bogert, Law of Trusts and Trustees*, § 559, at 169-171 (2d rev. ed. 1980); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). Here, on the subject at hand, the terms of the plan are not doubtful and the interpretation of the plan administrator is not reasonable. The [made-whole] doctrine is clearly not eliminated from the plan by virtue of its precise terms. Applying the ruling in *Barnes* to the facts of this case, the trustee, acting on behalf of the plan beneficiary, does not have to reimburse the plan until the beneficiary is fully compensated for her loss.

*Id.* The court, therefore, concluded the made-whole rule applied and the defendant was not required to reimburse the plaintiff until the defendant was fully compensated for her loss. *Id.*

     This Court finds persuasive the analysis of the *Bush* court and notes the provisions of the Plan at issue here, like those in *Bush,* do not suggest or clearly state a plan beneficiary is signing away his or her made-whole rights. In particular, the made-whole rule is not mentioned in the Plan. Similarly, application of the made-whole rule would not contravene any Plan provision noted by the parties. In addition, the reference to

37 - OPINION AND ORDER

subrogation of "all claims, demands, actions and rights of recovery of the individual against any third party or any insurer reimbursement" is not inconsistent with the proposition that a beneficiary of Defendant's Plan is not required to reimburse anything until a settlement or payment from a third party compensates the beneficiary for his or her entire loss, including past and future medical payments, past and future economic loss, and general damages.

The Court, therefore, finds the Plan administrator's interpretation of the Plan to preclude the made-whole rule is unreasonable and an abuse of the administrator's discretion in these circumstances. Accordingly, the Court concludes the made-whole rule applies as a "gap filler" in this matter, and Plaintiff need not reimburse Defendant until she has been made whole for her entire loss.

### E.    Made-whole rule as to Plaintiff's loss.

Plaintiff asserts she will not be made whole by her recoveries totaling $100,000 from the tortfeasor's automobile insurance and her UIM carrier. Plaintiff points to the fact that she has incurred $172,861.80 in medical expenses as of August 14, 2009. Stanke Decl. at ¶ 11. In addition, Plaintiff's counsel testifies in his Declaration that he estimates Plaintiff's claims for past medical expenses, future medical expenses, past pain and suffering, and future pain and suffering are worth between

38 - OPINION AND ORDER

$600,000 and $1,000,000 based on counsel's review of Plaintiff's medical records, billing statements, conversations with Plaintiff's treating physician, and conversations with Plaintiff. Stanke Decl. at ¶ 16.

Defendant, however, asserts Stanke's Declaration is not sufficient to establish that Plaintiff has not been made whole because it constitutes hearsay and Stanke is not qualified to opine as to Plaintiff's future medical needs or future pain and suffering.

In *Barnes* the plaintiff submitted an affidavit from her attorney estimating the value of her claim to be at least $65,000, and, therefore, the plaintiff asserted that she had not been made whole.  64 F.3d at 1395.  The district court refused to consider the attorney's affidavit on the ground that it was "'not adequate proof' showing a genuine issue of for trial because it was mere theorizing without specific factual support.'"  *Id*.  The Ninth Circuit noted:

> The affidavit states that the $65,000 figure is based on the cost of the operation, pain and suffering, and special damages.  The motion for good faith settlement, which was attached as an exhibit to the affidavit, stated that Barnes had $8,906.92 in lost wages.
>
> [The plaintiff] underwent a surgical discectomy and fusion. The Plan did not dispute the $65,000 figure or present its own estimate.

*Id*.  The court pointed out:  "If necessary, we could take judicial notice that a condition requiring such major surgery,

39 – OPINION AND ORDER

and the surgery itself, involve pain and suffering and may well cause permanent partial disability." *Id.* (citing *Hines ex rel. Sevier v. Sec'y of the Dep't of Health & Human Servs.*, 940 F.2d 1518, 1527 (Fed. Cir.1991)("Well-known medical facts are the types of matters of which judicial notice may be taken.")).

Here counsel's Declaration is based on Plaintiff's medical records, billing statements, and conversations with Plaintiff and her treating physician. In addition, Defendant does not dispute Plaintiff sustained at least $89,089.37 in medical expenses and that Plaintiff received a settlement for only $100,000.

The Court takes note of the litany of extremely serious injuries suffered by Plaintiff (including complex, nondisplaced compression and chance fracture at L3 level extending completely through posterior elements and disrupting all visible posterior supportive ligaments, right anterior abdominal wall hematoma, jejunal serosal tear, significant left paracentral acquired spinal canal stenosis, left neural foraminal compromise, broad disk bulge at L4-L5 level, disruption of posterior paraspinous ligaments and muscles at l3 level, significant stretch injury to nerve roots at l3 level, ascending colon contusion, and intestinal/peritoneal adhesions with obstruction), that Plaintiff was transported to the hospital using life flight, and that Plaintiff had at least two surgeries requiring extended

40 - OPINION AND ORDER

hospitalization.   Pursuant to *Barnes*, the Court also takes judicial notice that Plaintiff's condition requiring such major surgery and the surgery itself involved severe pain and suffering and may well cause permanent, partial disability that will likely result in more than $11,000 in additional damages for Plaintiff. The Court, therefore, concludes there is not any genuine issue of material fact as to whether Plaintiff has been made whole:  she has not.

On this record, the Court grants Plaintiff's Motion as to her claim that Defendant cannot enforce a lien against Plaintiff's recoveries because she has not been made whole and, accordingly, denies Defendant's Motion for Summary Judgment as to its Counterclaims involving Plaintiff's made-whole allegations.

## PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

As noted, on October 7, 2009, Plaintiff filed a Motion for Leave to File a Second Amended Complaint in which she seeks leave to amend her First Amended Complaint to add allegations that she has not been made whole by the settlements recovered from the third-party insurer and her UIM carrier and that Defendant failed to properly elect reimbursement under § 742.538.

### Standards

Federal Rule of Civil Procedure 15(a)(2) provides leave to amend "shall be freely given when justice so requires."

41 - OPINION AND ORDER

> The decision of whether to grant leave to amend
> . . . remains within the discretion of the
> district court, which may deny leave to amend due
> to "undue delay, bad faith or dilatory motive on
> the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed,
> undue prejudice to the opposing party by virtue of
> allowance of the amendment, [and] futility of
> amendment."

*Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir.

2008)(quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## Discussion

Plaintiff seeks leave to file a second amended complaint for

the purpose of explicitly adding the following allegations:

(1) Defendant "failed to properly elect reimbursement by

'subrogation' under" Oregon Revised Statute § 742.538 and

(2) Plaintiff has not been made whole "for her damages arising

from the June 4, 2007 car crash by the settlements she has

recovered from the liability insurer for the at-fault driver and

from her underinsured motorist carrier."  In her Reply, Plaintiff

notes the Court "need only consider" this Motion if it

> (a) rejects her argument that Providence has
> waived any lien or subrogation rights it may have
> had by clearly and unequivocally electing to
> proceed under ORS 742.534 instead of ORS 742.536
> or 742.538, (b) agrees with Providence that
> Plaintiff may not argue that Providence has failed
> to establish subrogation rights under ORS 742.538
> because the First Amended Complaint does not
> explicitly cite ORS 742.538, and (c) agrees with
> Providence that Plaintiff may not invoke the
> [made-whole] doctrine because the First Amended
> Complaint does not explicitly state that her third
> party recoveries have not made her whole.
> Plaintiff's Motion for Leave to Amend her

42 - OPINION AND ORDER

> Complaint is in no way a concession that her First
> Amended Complaint is defective, but is submitted
> only in the event that the Court agrees with
> Providence's arguments and finds that Plaintiff is
> precluded from invoking the [made-whole] doctrine
> or ORS 742.538 by her First Amended Complaint.

Defendant opposes Plaintiff's Motion on the grounds that (1) Plaintiff unduly delayed filing her Motion for Leave, (2) Plaintiff's filing of a second amended complaint at this stage would prejudice Defendant, (3) Plaintiff brings her Motion for Leave in bad faith, and (4) amending Plaintiff's First Amended Complaint would be futile.  Notwithstanding Defendant's objections to Plaintiff's proposed Second Amended Complaint, the Court notes Defendant has already thoroughly addressed in its Motion for Summary Judgment and related pleadings Plaintiff's allegations that Defendant failed to seek subrogation properly under § 742.538 and that Plaintiff has not been made whole.

## I.  Plaintiff has provided a reasonable explanation for failing to make her additional allegations sooner.

Defendant argues the Court should deny Plaintiff's Motion because Plaintiff unduly delayed filing her Motion.

"Although delay is not a dispositive factor in the amendment analysis, it is relevant, *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990), especially when no reason is given for the delay, *Swanson v. United States Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996)." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).

Defendant notes the Court set a case-management schedule in this matter that included a July 12, 2009, deadline to amend the pleadings.  On July 7, 2009, the Court granted Plaintiff's Motion for Leave to File an Amended Complaint and Plaintiff did so on July 15, 2009.  According to Defendant, even though Plaintiff was aware of the facts necessary to support allegations as to the made-whole rule and subrogation under § 742.538 on July 15, 2009, when she filed her First Amended Complaint, she did not seek leave to amend her First Amended Complaint until October 7, 2009, which was nearly three months after the deadline set by the Court, after Plaintiff's Motion for Summary Judgment was fully briefed, and after Defendant filed its Cross-Motion for Summary Judgment.

At oral argument, Plaintiff asserted the facts underlying her proposed new allegations have "always been present in every complaint that's been filed."  Plaintiff advised the Court that she did not realize Defendant intended to argue Plaintiff had to plead specific language as to the made-whole rule until Defendant filed its Cross-Motion for Summary Judgment.  Plaintiff asserts she filed her Motion for Leave to Amend her First Amended Complaint as soon as she was aware of Defendant's argument.

On this record, the Court concludes Plaintiff has provided a reasonable explanation for her failure to allege in her original Complaint and her First Amended Complaint that she had not been

made whole or that Defendant failed to comply with § 742.538.

**II. Defendant has not established it would be prejudiced if the Court allowed Plaintiff to file the proposed Second Amended Complaint.**

Defendant asserts it will be prejudiced if the Court allows Plaintiff to include the new allegations in her Complaint because Defendant may have to conduct additional discovery to defend itself adequately against these claims. As Plaintiff notes, however, Defendant is Plaintiff's health insurer and is aware of the expenses that Plaintiff has incurred and that have been paid in medical benefits. Defendant is also aware of the extent of Plaintiff's injuries. In fact, Defendant's statements in its Concise Statement of Material Facts that it has paid $89,089.37 in medical expenses for Plaintiff and that Plaintiff has received $100,000 from settlements with the third-party insurer and her UIM carrier are undisputed. These facts are sufficient for the parties to properly litigate Plaintiff's made-whole and § 742.538 subrogation claims. Moreover, Defendant has not identified any further discovery that would be necessary to litigate Plaintiff's new allegations properly. Finally, Defendant has thoroughly analyzed in its Motion for Summary Judgment and related pleadings the allegations that Plaintiff seeks to add in her proposed Second Amended Complaint.

The Court, therefore, concludes on this record that Defendant has not established it would be prejudiced if the Court

45 - OPINION AND ORDER

allowed Plaintiff to file her proposed Second Amended Complaint.

## III. Defendant has not established Plaintiff brings her Motion in bad faith.

Defendant asserts Plaintiff brings her Motion in bad faith because she filed it after Defendant filed its Cross-Motion for Summary Judgment and after the Court's deadline for amending pleadings.  Moreover, even though Plaintiff asserted in the past that ERISA did not preempt her claims, she now seeks to rely on the ERISA made-whole rule.

The Court has already concluded Plaintiff offered a credible explanation as to why she did not seek to amend her First Amended Complaint before October 2009 to include allegations relating to the made-whole rule and § 742.538.  In addition, the Court notes the made-whole rule is a federal common-law rule recognized by the Ninth Circuit as applying to all insurance law and not limited merely to benefit plans subject to ERISA.  *Barnes*, 64 F.3d at 1394.  The Court, therefore, concludes on this record that Defendant has not established Plaintiff brings her Motion in bad faith.

## IV. The proposed amendments to Plaintiff's First Amended Complaint are not entirely futile.

Defendant asserts Plaintiff's proposed amendments would be futile because § 742.538 does not preclude Defendant's right to reimbursement and, moreover, the made-whole rule does not apply.

For the reasons noted earlier, the Court concludes

46 - OPINION AND ORDER

§ 742.538 does not preclude Defendant's right to reimbursement under the Plan and, therefore, allowing Plaintiff to add allegations involving Defendant's failure to comply with § 742.538 would be futile. The Court, however, also concludes for the reasons noted earlier that the made-whole rule applies in this case, and, therefore, it would not be futile to allow Plaintiff to amend her First Amended Complaint to add an allegation that she has not been made whole.

On this record and in the exercise of the Court's discretion, the Court grants Plaintiff's Motion for Leave to File a Second Amended Complaint and deems Plaintiff's proposed Second Amended Complaint filed as of October 19, 2009, the date Plaintiff filed her Motion for Leave to File Second Amended Complaint. The Court, as noted, however, denies Plaintiff's added claim that Defendant can seek subrogation only under § 742.538.

## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiff's Motion (#27) for Summary Judgment and **DENIES** Defendant's Cross-Motion (#31) for Summary Judgment on the ground that the record reflects Plaintiff has not been made whole. The Court, therefore, concludes Plaintiff is entitled to a judgment that Defendant may not enforce its right to a lien or reimbursement under the Plan

47 - OPINION AND ORDER

until Plaintiff has been made whole.  In addition, the Court concludes Plaintiff is entitled to recover her costs and attorneys' fees incurred to obtain this result.

The Court also **GRANTS** Plaintiff's Motion (#46) for Leave to File Second Amended Complaint and deems it filed as of October 19, 2009.

Finally, the Court **DIRECTS** the parties to confer to determine (1) whether further proceedings are needed to resolve any issues in Plaintiff's Supplemental Complaint (#61) as to Defendant's alleged failure to provide Plaintiff with a complete copy pf the Plan Document, (2) what specific declarations the parties propose the Court to make consistent with its rulings herein, and (3) whether the parties are able to resolve Plaintiff's claim for costs and attorneys' fees without further litigation.  The Court **DIRECTS** the parties to submit a joint status report no later than **April 16, 2010**, addressing these issues and any other matters of concern to the parties pertaining to entry of a final judgment.

IT IS SO ORDERED.

DATED this 16th day of March, 2010.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


KATHERINE CAVANAUGH, a minor            08-CV-1351-BR
child, by and through BRIAN
CAVANAUGH, Guardian Ad Litem,           OPINION AND ORDER

       Plaintiff,

v.

PROVIDENCE HEALTH PLAN, an
Oregon nonprofit corporation,

       Defendant.


SAMUEL T. STANKE
1400 S.W. Montgomery Street
Portland, OR 97201
(503) 224-1127

       Attorney for Plaintiff

ARDEN J. OLSON
MARJORIE A. BERGER
Harrang Long Gary Rudnick, P.C.
360 E. 10th Avenue
Suite 300
Eugene, OR 97401-3273
(541) 485-0220

       Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Plaintiff's Motion (#27) for Summary Judgment, Defendant's Cross-Motion (#31) for Summary Judgment, and Plaintiff's Motion (#46) for Leave to File Second Amended Complaint.

For the reasons that follow, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment on the ground that the record reflects Plaintiff has not been made whole.  The Court also **GRANTS** Plaintiff's Motion for Leave to file Second Amended Complaint and deems Plaintiff's proposed Second Amended Complaint filed as of October 19, 2009.

## BACKGROUND

On June 4, 2007, Plaintiff Katherine Cavanaugh suffered injuries in an automobile accident with a third party.  Plaintiff received medical treatment, which was paid for in part by health insurance provided by Defendant Providence Health Plan as a benefit of her mother's employment with Providence Health System Oregon.

On August 16, 2007, Defendant sent a letter to the third party's insurance company in which Defendant advised:

> As you know, ORS 742.534 requires an authorized
> motor vehicle liability insurer, whose insured is
> or would be held legally liable for damages to

2 - OPINION AND ORDER

> reimburse the health insurer directly for the
> benefits the health insurer has so furnished
> . . . .  This letter will serve as Providence
> Health Plan's demand under that statute for direct
> insurer to insurer reimbursement.

Decl. of Samuel T. Stanke, Ex. 1.

On February 29, 2008, Defendant sent a second letter to the third party's insurance company in which Defendant advised:

> I wrote you on August 16 and informed you that
> Providence had made our formal demand to you for
> claims we have paid that are related to the above
> accident. . . .  As you know, ORS 742.534 requires
> an authorized motor vehicle liability insurer,
> whose insured is or would be held legally liable
> for damages to reimburse the health insurer
> directly for the benefits the health insurer has
> so furnished.  Our August letter to you served as
> Providence Health Plan's demand under that statute
> for direct insurer to insurer reimbursement.  We
> have paid a total of $58,161.33 to date, in
> related claims.

Stanke Decl., Ex. 2.  Defendant evidently did not pursue its rights under Oregon Revised Statute § 742.534 any further and, in any event, never received any direct reimbursement from the third party's insurance company.

On May 22, 2008, Plaintiff filed an action in Multnomah County Circuit Court against Plaintiff's own auto insurer for uninsured motorist benefits (UIM) and against the third party and others allegedly liable for her injuries (*Cavanaugh v. Geico Casualty Co. et al.,* Case No. 0805-07549).  Plaintiff served Defendant with notice of the action on May 27, 2008.

On August 15, 2008, Plaintiff reached a tentative settlement

3 - OPINION AND ORDER

with the third party for the benefits available under the third
party's vehicle insurance policy.  On September 12, 2008,
Plaintiff reached a tentative agreement with her auto insurer to
settle her claim for the maximum amount of UIM benefits available
under her policy less the amount recovered from the third party's
insurer.  As a result, Plaintiff would receive $100,000 from
these settlements.

　　　Before seeking the state court's approval of the settlements
in *Cavanaugh v. Geico*, Plaintiff asked Defendant to concede that
it did not have a valid lien against the settlement amounts
because (1) it had elected direct reimbursement under Oregon
Revised Statute § 742.534 and (2) it did not give written notice
of its election to seek reimbursement by lien within 30 days of
May 27, 2008 (the date Plaintiff served Defendant with notice of
*Cavanaugh v. Geico*) as required by § 742.536.  Defendant refused
to concede it did not have the right to assert a lien.

　　　On October 28, 2008, Plaintiff filed a declaratory-judgment
action in Multnomah County Circuit Court in which she sought a
declaration that any lien Defendant claimed on the amount
Plaintiff has recovered or will recover in *Cavanaugh v. Geico* is
invalid because Defendant did not comply with § 742.536.
Plaintiff also sought a declaration that to the extent
Defendant's Plan contains the following provision, it is void and
unenforceable under Oregon Revised Statute § 742.021 as "less

4 - OPINION AND ORDER

favorable to the insured" than the applicable provisions of the
Oregon Insurance Code:  "[Plaintiff is] obligated to pay for any
future medical needs related to the accident out of any proceeds
she receives from the insurance available here, and only after
that will Providence's coverage resume paying for any related
claims."

On November 14, 2008, Defendant removed Plaintiff's
declaratory-judgment action to this Court on the basis of
complete preemption under § 1132(a)(1)(B) of the Employee
Retirement Income Security Act (ERISA).

On December 8, 2008, Plaintiff filed a Motion to Remand this
matter to Multnomah County Circuit Court on the ground that ERISA
does not completely preempt this matter, and, therefore, this
Court lacks jurisdiction.

On April 15, 2009, the Court issued an Opinion and Order in
which it concluded ERISA does not preempt Plaintiff's claim that
Defendant's lien on the amount Plaintiff has recovered or will
recover in *Cavanaugh v. Geico* is invalid because Defendant did
not comply with § 742.536.  The Court, however, found ERISA
preempted Plaintiff's claim that certain provisions of
Defendant's Plan are void and unenforceable under Oregon Revised
Statute § 742.021 as "less favorable to the insured" than the
applicable provisions of the Oregon Insurance Code because

> § 742.021 requires that the terms of insurance
> policies cannot be less favorable to the insured

> than provisions of the Oregon Insurance Code.  To
> decide Plaintiff's claim would require a compari-
> son of the terms of Plaintiff's ERISA Plan to the
> requirements of the Oregon Insurance Code and a
> determination as to whether the terms of the Plan
> are "less favorable."  Plaintiff's claim as to
> § 742.021 also has a connection with an ERISA plan
> because adjudication of this claim would require
> the Court to interpret the terms of the Plan and
> to compare them to the requirements of the Oregon
> Insurance Code.

Opin. and Order at 20 (issued Apr. 15, 2009).  Thus, for purposes

of removal jurisdiction, the Court found this aspect of

Plaintiff's claim was preempted, and, therefore, the matter was

properly removed to this Court.

On July 15, 2009, Plaintiff filed an Amended Complaint to

amend the case caption to remove Plaintiff's guardian *ad litem*

and to reflect that Plaintiff had obtained the age of majority.

On July 30, 2009, Defendant filed an Answer to First Amended

Complaint, Affirmative Defense & Counterclaims in which it

asserts five Counterclaims and seeks, among other things, (1) a

declaration that under the terms of the Plan "plaintiff is

required to reimburse the [P]lan for benefits provided on account

of the negligence of a third party, and to pay for future medical

costs, if any, out of any recovery obtained from the third

party"; (2) "recovery of monies pursuant to a constructive trust"

for the amount of benefits Defendant has paid Plaintiff to date

"less a reasonable amount equal to plaintiff's out-of-pocket

expenses . . . in obtaining the Recovery"; and (3) damages based

6 - OPINION AND ORDER

on state-law breach of contract.  Defendant requests the Court,
among other things, to

> [d]eclare that (a) Providence's lack of success in
> enforcing its rights against plaintiff directly
> against the motor vehicle carriers identified in
> paragraph 5 of plaintiff's complaint in no way
> impaired Providence's right to collect from
> plaintiff under the terms of the plan;
> (b) Providence's decision not to elect to enforce
> its rights under ORS 742.536 in no way impaired
> Providence's right to collect from plaintiff under
> the terms of the plan; and (c) Nothing in ORS
> 742.538 impairs the reimbursement terms of an
> ERISA plan, which are enforceable under federal
> law;
>
> Order plaintiff to hold $87,185.31, or such
> other amount as may be shown at trial to have been
> paid by Providence on her behalf, less a reason-
> able amount equal to plaintiff's out-of-pocket
> expenses, if any, in obtaining the Recovery, in
> trust for Providence, and to pay such funds over
> to Providence in accord with the terms of the
> plan, plus statutory prejudgment interest;
>
> In the alternative, enter judgment in
> Providence's favor in the amount of $87,185.31, or
> such other amount as may be shown at trial to have
> been paid by Providence on her behalf, less a
> reasonable amount equal to plaintiff's out-of-
> pocket expenses, if any, in obtaining the
> Recovery, as damages for breach of plaintiff's
> contract obligation to fulfill her obligations
> under the terms of the plan.

On August 14, 2009, Plaintiff moved for summary judgment as
to all of her claims as well as Defendant's Counterclaims on the
grounds that (1) Defendant failed to give written notice of an
election to proceed under either Oregon Revised Statute § 742.536
or § 742.538, and, therefore, Defendant waived any lien against
Plaintiff's UIM and third-party recoveries; (2) in the

7 - OPINION AND ORDER

alternative, Defendant cannot enforce a lien against Plaintiff's recoveries because those recoveries have not made Plaintiff whole; and (3) the "exhaustion clause" in the Plan is less favorable than the Oregon Insurance Code, and, therefore, the exhaustion clause of the Plan is invalid under § 742.021.

On September 10, 2009, Defendant filed a Cross-Motion for Summary Judgment as to the above Counterclaims and seeks an order

> [d]eclaring that (a) Providence's lack of success
> in enforcing its rights against plaintiff directly
> against the motor vehicle carriers identified in
> paragraph 5 of plaintiff's complaint in no way
> impaired Providence's right to collect from
> plaintiff under the terms of the plan; (b) Provi-
> dence's decision not to elect to enforce its
> rights under ORS 742.536 in no way impaired
> Providence's right to collect from plaintiff under
> the terms of the plan; and (c) Nothing in ORS
> 742.538 impairs the reimbursement terms of an
> ERISA plan, which are enforceable under federal
> law;
>
> [o]rdering plaintiff to hold $89,089.37, or
> such other amount as may be shown at trial to have
> been paid by Providence on her behalf, less a
> reasonable amount equal to plaintiff's out-of-
> pocket expenses, if any, in obtaining the
> Recovery, in trust for Providence, and to pay such
> funds over to Providence in accord with the terms
> of the plan, plus statutory prejudgment interest;
>
> In the alternative, enter judgment in Provi-
> dence's favor in the amount of $89,089.37, or such
> other amount as may be shown at trial to have been
> paid by Providence on her behalf, less a
> reasonable amount equal to plaintiff's out-of-
> pocket expenses, if any, in obtaining the
> Recovery, as damages for breach of plaintiff's
> contract obligation to fulfill her obligations
> under the terms of the plan.

On October 7, 2009, Plaintiff filed a Motion for Leave to

8 - OPINION AND ORDER

File a Second Amended Complaint in which she seeks to amend her

First Amended Complaint

> to specifically allege that she has not been made
> whole for her damages arising from the June 4,
> 2007 car crash by the settlements she has
> recovered from the liability insurer for the at-
> fault driver and from her [UIM] carrier, and to
> specifically allege that defendant failed to
> properly elect reimbursement by "subrogation"
> under ORS 742.538.

On November 19, 2009, Plaintiff filed a Motion for Leave to

File First Amended and Supplemental Complaint in which Plaintiff

sought leave to supplement her Complaint to allege Defendant

violated 29 U.S.C. §§ 1132(c)(1) and 1024(b)(4) when it failed to

provide Plaintiff with a copy of Document 36-1 (the Providence

Health System-Oregon Employee Health Plan) within 30 days of

Plaintiff's written request for a complete copy of the Plan.

On December 18, 2009, the Court held oral argument on

Plaintiff's Motion for Leave to File a Second Amended Complaint

and Motion for Leave to File First Amended and Supplemental

Complaint.  The Court granted Plaintiff's Motion for Leave to

File First Amended and Supplemental Complaint and took

Plaintiff's Motion for Leave to File a Second Amended Complaint

under advisement.


## PARTIES' MOTIONS FOR SUMMARY JUDGMENT

As noted, Plaintiff moves for summary judgment as to all of

her claims and Defendant's Counterclaims.  Defendant moves for

9 - OPINION AND ORDER

summary judgment as to its Counterclaims for declaratory relief, constructive trust, and breach of contract.

## Standards

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## Discussion

### I.  Oregon Revised Statutes §§ 742.536 and 742.538 do not preclude Defendant's right to seek reimbursement under the terms of the Plan.

Oregon Revised Statutes §§ 742.534, 742.536, and 742.538 address three alternate methods by which an insurer that has provided benefits for an insured who has been injured in a motor-vehicle accident may seek to be reimbursed for those benefits. Under § 742.534, the insurer may seek such reimbursement directly from the liability insurer of the tortfeasor who is liable to the insured. Under § 742.536, the insurer may obtain a lien on any

11 - OPINION AND ORDER

recovery its insured receives from the tortfeasor.  Under

§ 742.538, the insurer may exercise a right of subrogation to any

proceeds its insured receives from settlement with the tortfeasor

or obtains from any judgment against the tortfeasor.  Each of

these three statutory options is subject to conditions the

insurer must meet in order to exercise its rights.

As noted, Defendant initially sought direct reimbursement

for Plaintiff's medical expenses from the third party's insurer

pursuant to Oregon Revised Statute § 742.534(1), which provides

in pertinent part:

> [E]very authorized motor vehicle liability insurer
> whose insured is or would be held legally liable
> for damages for injuries sustained in a motor
> vehicle accident by a person . . . for whom
> benefits have been furnished by an authorized
> health insurer, shall reimburse such other insurer
> for the benefits it has so furnished if it has
> requested such reimbursement, has not given notice
> as provided in ORS 742.536 that it elects recovery
> by lien in accordance with that section and is
> entitled to reimbursement under this section by
> the terms of its policy.

The third party's insurer, however, failed to reimburse Defendant

and it does not appear Defendant took any further action to

enforce its rights against that insurer.

Defendant then attempted to enforce a lien or a right to

subrogation directly from Plaintiff.  As noted, Oregon Revised

Statutes §§ 742.536 and 742.538 address these avenues of

reimbursement.

Oregon Revised Statute § 742.536(1) and (2) provide in

12 - OPINION AND ORDER

pertinent part:

> (1) When . . . an authorized health insurer has
> furnished benefits, for a person injured in a
> motor vehicle accident, if such injured person
> makes claim, or institutes legal action, for
> damages for such injuries against any person, such
> injured person shall give notice of such claim or
> legal action to the insurer by personal service or
> by registered or certified mail.

> * * *

> (2) The insurer may elect to seek reimbursement as
> provided in this section for benefits it has so
> furnished . . . if the insurer has not been a
> party to an interinsurer reimbursement proceeding
> with respect to such benefits under ORS 742.534
> and is entitled by the terms of its policy to the
> benefit of this section.  The insurer shall give
> written notice of such election within 30 days
> from the receipt of notice or knowledge of such
> claim or legal action to the person making claim
> or instituting legal action and to the person
> against whom claim is made or legal action
> instituted, by personal service or by registered
> or certified mail.

Oregon Revised Statute § 742.538(1) and (4) provide in pertinent

part:

> If a motor vehicle liability insurer has furnished
> personal injury protection benefits, or a health
> insurer has furnished benefits, for a person
> injured in a motor vehicle accident, and the
> interinsurer reimbursement benefit of ORS 742.534
> is not available under the terms of that section,
> and the insurer has not elected recovery by lien
> as provided in ORS 742.536, and is entitled by the
> terms of its policy to the benefit of this
> section:

> (1) The insurer is entitled to the proceeds of any
> settlement or judgment that may result from the
> exercise of any rights of recovery of the injured
> person against any person legally responsible for
> the accident, to the extent of such benefits

13 - OPINION AND ORDER

furnished by the insurer less the insurer's share
of expenses, costs and attorney fees incurred by
the injured person in connection with such
recovery.

* * *

(4) If requested in writing by the insurer, the
injured person shall take, through any
representative not in conflict in interest with
the injured person designated by the insurer, such
action as may be necessary or appropriate to
recover such benefits furnished as damages from
such responsible person, such action to be taken
in the name of the injured person, but only to the
extent of the benefits furnished by the insurer.
In the event of a recovery, the insurer shall also
be reimbursed out of such recovery for the injured
person's share of expenses, costs and attorney
fees incurred by the insurer in connection with
the recovery.

Plaintiff contends Defendant "waived any reimbursement

rights against [P]laintiff . . . by failing to give the written

notice required by ORS 742.536 and 742.538." Although it is

undisputed that Defendant did not perfect a right to

reimbursement under §§ 742.534, 742.536, or 742.538, Defendant,

nonetheless, contends it did not waive its right to seek

reimbursement because it retained that right under the following

provisions of the Plan:

By accepting membership in the Plan, you make an
agreement with us – if you receive a settlement
for an illness or injury, you must pay us back for
the cost of your treatment.
*Example: You are injured while on a weekend visit
to a coastal resort. You sue, and are awarded
$7,500 plus attorney's fees. Meanwhile, the Plan
has paid a total of $6,000 for treatment of your
injury, so you must reimburse us for $6,000 out of
your settlement.*

14 – OPINION AND ORDER

> Before you accept any settlement, you must let us
> know the terms, and tell the third party that we
> have an interest in the settlement.  If you have
> medical bills after your (*sic*) receive a
> settlement, we will not pay those bills until your
> settlement is exhausted.

Decl. of Kathleen Warren, Ex. 2 at 43 (emphasis in original).

According to Defendant, §§ 742.536 and 742.538 are merely

supplemental remedies available to enforce an ERISA plan, and,

therefore, those statutes do not limit Defendant's remedies under

its ERISA Plan.  Accordingly, Defendant asserts ERISA preempts

those statutes to the extent that they attempt to limit

Defendant's right to seek reimbursement under the Plan.

**A.    ERISA preemption**

In *Aetna Healthcare v. Davila*, the Supreme Court

explained ERISA preemption as follows:

> Congress enacted ERISA to "protect . . . the
> interests of participants in employee benefit
> plans and their beneficiaries" by setting out
> substantive regulatory requirements for employee
> benefit plans and to "provid[e] for appropriate
> remedies, sanctions, and ready access to the
> Federal courts."  29 U.S.C. § 1001(b).  The
> purpose of ERISA is to provide a uniform
> regulatory regime over employee benefit plans.
> To this end, ERISA includes expansive pre-emption
> provisions, *see* ERISA § 514, 29 U.S.C. § 1144,
> which are intended to ensure that employee benefit
> plan regulation would be "exclusively a federal
> concern."  *Alessi v. Raybestos-Manhattan, Inc.*,
> 451 U.S. 504, 523 (1981).
>
> ERISA's "comprehensive legislative scheme"
> includes "an integrated system of procedures for
> enforcement."  *Russell*, 473 U.S., at 147 (internal
> quotation marks omitted).  This integrated
> enforcement mechanism, ERISA § 502(a), 29 U.S.C.

15 - OPINION AND ORDER

§ 1132(a), is a distinctive feature of ERISA.

* * *

Therefore, any state-law cause of action that
duplicates, supplements, or supplants the ERISA
civil enforcement remedy conflicts with the clear
congressional intent to make the ERISA remedy
exclusive and is therefore pre-empted. *See* 481
U.S. at 54-56; *see also Ingersoll-Rand Co. v.
McClendon*, 498 U.S. 133, 143-145 (1990).

542 U.S. 200, 208 (2004).

ERISA's preemption provision provides ERISA shall
generally "supersede any and all State laws insofar as they may
now or hereafter relate to any employee benefit plan described in
section 1003(a) of this title and not exempt under section
1003(b) of this title." 29 U.S.C. § 1144(a).

"Generally speaking, a common law claim relates to an
employee benefit plan governed by ERISA if it has a *connection
with* or *reference to* such a plan." *Providence Health Plan v.
McDowell,* 385 F.3d 1168, 1172 (9th Cir. 2004)(quotations omitted;
emphasis added).

"In determining whether a claim has a 'connection with'
an employee benefit plan, courts in [the Ninth Circuit] use a
relationship test. Specifically, the emphasis is on the genuine
impact that the action has on a relationship governed by ERISA,
such as the relationship between the plan and a participant."
*Id.* (citing *Abraham v. Norcal Waste Sys., Inc.*, 265 F.3d 811,
820-21 (9th Cir. 2001)). "In evaluating whether a common law

claim has 'reference to' a plan governed by ERISA, the focus is
whether the claim is premised on the existence of an ERISA plan,
and whether the existence of the plan is essential to the claim's
survival.  If so, a sufficient 'reference' exists to support
preemption."  *Id*. (citations omitted).

**B.    ERISA preempts Plaintiff's claims involving §§ 742.536
        and 742.538.**

As noted, Defendant contends even though it did not
perfect its right to reimbursement under any provision of Oregon
Revised Statutes chapter 742, it may seek reimbursement under the
provisions of the Plan because ERISA preempts the provisions of
chapter 742 to the extent that they attempt to limit an ERISA
plan's ability to enforce its terms.  Plaintiff, however, points
out that the Court previously concluded in its April 15, 2009,
Opinion and Order that ERISA does not preempt § 742.536.
According to Plaintiff, therefore, Defendant may seek a lien only
if it complies with the terms of chapter 742.

As a preliminary matter, the Court notes in its
April 15, 2009, Opinion and Order it addressed the issue of ERISA
preemption as to § 742.536 only for the purpose of determining
whether the matter was properly removed to this Court.  On the
issue of removal, the Court concluded § 742.536 does not on its
face require an insurer to proceed only under the provisions of
that section to seek a lien, and, therefore, it does not limit an
ERISA plan's rights under its plan.  Specifically, the Court

17 - OPINION AND ORDER

concluded:  "To determine whether Defendant complied with the
requirements of § 742.536 and whether compliance with § 742.536
is the only mechanism for obtaining a lien under state law, the
Court is not required to review the Plan terms."  Accordingly,
the Court concluded for removal purposes only that ERISA does not
preempt § 742.536 as that issue was framed in Plaintiff's claim
at the time of removal.  Now at summary judgment, however,
Plaintiff requests the Court to declare that Defendant may only
seeks a lien under § 742.536 and/or 742.538 rather than
proceeding on the basis of the provisions of its ERISA plan.
Accordingly, the present issue before the Court is whether
compliance with the provisions of chapter 742 is the only
mechanism for an ERISA plan to obtain a lien even if the ERISA
plan contains a lien provision with its own requirements that are
separate and apart from the provisions of Oregon statutes.  Thus,
the Court must address whether ERISA preempts §§ 742.736 and
742.538 as Plaintiff frames its claims for purposes of summary
judgment.

        Defendant relies on *FMC Corporation v. Holliday*, 498
U.S. 52 (1990), to support its assertion that Plaintiff's claims
involving §§ 742.536 and 742.538 are preempted by ERISA as they
are now framed for purposes of summary judgment.  In *FMC*, the
plaintiff was injured in an automobile accident, and the
defendant, a self-funded welfare-benefit plan, paid a portion of

18 - OPINION AND ORDER

the plaintiff's medical expenses.  498 U.S. at 55.  The plaintiff
brought a negligence action in state court against the other
driver.  *Id*.  While the state action was pending, the defendant
notified the plaintiff that it would seek reimbursement for the
amounts it had paid for the plaintiff's medical expenses pursuant
to the terms of the benefit plan.  *Id*.  The plaintiff refused to
reimburse the defendant on the ground that the Pennsylvania Motor
Vehicle Financial Responsibility Law (MVFRL) precluded
subrogation by the defendant.  *Id*.  The defendant sought a
declaratory judgment in federal court.  The district court
concluded the MVFRL prohibited the defendant from exercising its
subrogation rights.  *Id*. at 56.  The Third Circuit affirmed the
district court's conclusion that ERISA did not preempt the MVFRL.
*Id.*  The Supreme Court, however, concluded ERISA preempted
application of the MVFRL in that case.  *Id*. at 65.  The Court
reasoned:

> Three provisions of ERISA speak expressly to the
> question of pre-emption:
>
> "Except as provided in subsection (b) of this
> section [the saving clause], the provisions of
> this subchapter . . . shall supersede any and all
> State laws insofar as they may now or hereafter
> relate to any employee benefit plan."  § 514(a),
> as set forth in 29 U.S.C. § 1144(a) (pre-emption
> clause).
>
> "Except as provided in subparagraph (B) [the
> deemer clause], nothing in this subchapter shall
> be construed to exempt or relieve any person from
> any law of any State which regulates insurance,
> banking, or securities."  § 514(b)(2)(A), as set

19 - OPINION AND ORDER

forth in 29 U.S.C. § 1144(b)(2)(A) (saving
clause).

"Neither an employee benefit plan . . . nor any
trust established under such a plan, shall be
deemed to be an insurance company or other insurer
. . . or to be engaged in the business of
insurance . . . for purposes of any law of any
State purporting to regulate insurance companies
[or] insurance contracts."  § 514(b)(2)(B), 29
U.S.C. § 1144(b)(2)(B) (deemer clause).

*Id.* at 57.  The Court summarized these provisions as follows:

The pre-emption clause . . . establishes as an area of
exclusive federal concern the subject of every state
law that "relate[s] to" an employee benefit plan
governed by ERISA.  The saving clause returns to the
States the power to enforce those state laws that
"regulat[e] insurance," except as provided in the
deemer clause.  Under the deemer clause, an employee
benefit plan governed by ERISA shall not be "deemed" an
insurance company, an insurer, or engaged in the
business of insurance for purposes of state laws
"purporting to regulate" insurance companies or
insurance contracts.

*Id.* at 58.  The Court concluded the MVFRL had "reference to"

benefit plans governed by ERISA because the MVFRL provides in

pertinent part:

In actions arising out of the maintenance or use
of a motor vehicle, there shall be no right of
subrogation or reimbursement from a claimant's
tort recovery with respect to . . . benefits
. . . paid or payable [by] . . . [a]ny program,
group contract or other arrangement for payment of
benefits [including] . . . benefits payable by a
hospital plan corporation or a professional health
service corporation.

*Id.* at 59 (quotations omitted).  The Court also concluded the

MVFRL had a "connection to" ERISA benefit plans because it

subjects plan administrators to conflicting state regulations;

20 - OPINION AND ORDER

specifically, it "prohibits plans from being structured in a manner requiring reimbursement in the event of a recovery from a third-party [and, therefore,] requires plan providers to calculate benefit levels in Pennsylvania based on expected liability conditions that differ from those in States that have not enacted similar antisubrogation legislation." *Id*. at 59-60. The Court, therefore, concluded the MVFRL "relates to" an ERISA plan. *Id*. at 59.  The Court also concluded the MVFRL "falls within ERISA's . . . saving clause" because "[i]t does not merely have an impact on the insurance industry; it is aimed at it." *Id*. at 61 (citation omitted).  Thus, the savings clause "returns the matter of subrogation to state law[, and, therefore, the MVFRL is not preempted]. . . [u]nless the statute is excluded from the reach of the saving clause by virtue of the deemer clause." *Id*.  Turning to application of the deemer clause, the Court concluded the deemer clause "exempt[s] self-funded ERISA plans from state laws that 'regulate insurance' within the meaning of the saving clause . . . [and, therefore,] . . . relieves [self-insured] plans from state laws purporting to regulate insurance." *Id*.  The Court summarized:

> As a result, . . . State laws directed toward the
> plans are pre-empted because they relate to an
> employee benefit plan but are not "saved" because
> they do not regulate insurance.  State laws that
> directly regulate insurance are "saved" but do not
> reach self-funded employee benefit plans because
> the plans may not be deemed to be insurance
> companies, other insurers, or engaged in the

> business of insurance for purposes of such state
> laws.  On the other hand, employee benefit plans
> that are insured are subject to indirect state
> insurance regulation. . . .  The ERISA plan is
> consequently bound by state insurance regulations
> insofar as they apply to the plan's insurer.

*Id.*

The Court recognized its decision "results in a distinction between insured and [self-insured] plans, leaving the former open to indirect regulation while the latter are not," but noted it was "merely giv[ing] life to a distinction created by Congress in the 'deemer clause,' a distinction Congress is aware of and one it has chosen not to alter." *Id.* at 62 (quotation omitted).  Because the plan at issue in *FMC* was self-insured and the MVFRL "related to" an ERISA plan, the Court concluded ERISA preempted application of the MVFRL, and, therefore, § 1144(a) of ERISA preempted the plaintiff's claim.  *Id.* at 64.

Here it is undisputed that Defendant is a self-funded or self-insured ERISA plan.  According to Defendant, therefore, Plaintiff's claims involving §§ 742.536 and 742.538 as they are currently framed for purposes of summary judgment are preempted by § 1144(a) of ERISA as set out in *FMC Corporation*.

The Ninth Circuit has held a state-law claim "relates to an employee benefit plan governed by ERISA if it has a *connection with* or *reference to* such a plan." *Providence Health Plan*, 385 F.3d at 1172 (quotations omitted; emphasis added).

22 - OPINION AND ORDER

**1.   Plaintiff's claims involving §§ 742.536 and 742.538 "refer to" a plan governed by ERISA.**

A claim "refers to" a plan governed by ERISA if the "claim is premised on the existence of an ERISA plan, and . . . the existence of the plan is essential to the claim's survival," *id.*, or it "act[s] immediately and exclusively upon an ERISA plan." *Abraham v. Norcal Waste Syst., Inc.*, 265 F.3d 811, 820 (9th Cir. 2001).

The Court finds Plaintiff's claims as to §§ 742.536 and 742.538 as they are currently framed "act immediately and exclusively" on Defendant's ERISA Plan because Plaintiff requests the Court to declare that Defendant must seek any lien or reimbursement under the provisions of chapter 742 and is precluded from seeking such a lien or reimbursement under the provisions of the Plan.  Such a declaration would result in Defendant continuing to distribute benefits to Plaintiff without any right to reimbursement.  *See Providence*, 385 F.3d at 1172. The Court, therefore, concludes Plaintiff's claims involving §§ 742.536 and 742.538 "refer to" an ERISA plan.

**2.   Plaintiff's claims involving §§ 742.536 and 742.538 have a connection with a plan governed by ERISA.**

A state law has a connection with an ERISA plan if the state law risks "subjecting plan administrators to conflicting state regulations." *FMC*, 498 U.S. at 59.  In

23 - OPINION AND ORDER

*Abraham*, the Ninth Circuit identified three traditional areas of preemption:

> [S]tate laws that: (1) mandate employee benefit structures or their administration; (2) bind employers or plan administrators to particular choices or preclude uniform administrative practice; and (3) provide alternative enforcement mechanisms to obtain ERISA plan benefits.

265 F.3d at 820, n.6 (citing *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1217 (9th Cir. 2000)).

As Plaintiff's claims are currently framed, Plaintiff seeks a declaration that would bind Defendant, an ERISA plan administrator, to "particular choices" for seeking a lien or reimbursement; *i.e.*, Defendant could only seek a lien or reimbursement under the provisions of chapter 742 rather than under the provisions of the Plan. The Court, therefore, concludes Plaintiff's claims involving §§ 742.536 and § 742.538 have "a connection with" an ERISA plan.

Because Plaintiff's claims as to §§ 742.536 and 742.538 as they are currently framed have "reference to" and a "connection with" an ERISA plan, the Court concludes Plaintiff's claims as to §§ 742.536 and 742.538 are "related to" an ERISA plan. Thus, Plaintiff's claims involving §§ 742.536 and 742.538 are completely preempted under ERISA.

### 3.    *Mid-Century* does not address ERISA preemption.

In any event, Plaintiff relies on *Mid-Century Insurance Company v. Turner* to support its contention that

24 - OPINION AND ORDER

Defendant may not seek a lien or reimbursement under the terms of
its Plan.  In that case the court held:

> Because we have construed the contract in
> accordance with [Oregon Revised Statute
> §§ 742.534, 742.536, and 742.538,] we must
> conclude that defendant's "fiduciary" duties . . .
> are coextensive with defendant's duties under ORS
> 742.536 and ORS 742.538, to protect its insurer's
> interests if the insurer takes the appropriate
> steps under one of those statutes to assert lien
> or subrogation rights.  In the absence of the
> insurer taking appropriate steps to assert its
> rights-and plaintiff has conceded that it did not
> proceed under either ORS 742.536 or ORS 742.538 in
> the present case-the insured has no "fiduciary"
> duty to hold any recovery in trust for the
> insurer.

219 Or. App. 44, 61 (2008).  In *Mid-Century*, the defendant had an
automobile insurance policy with the plaintiff that included
personal-injury protection (PIP) benefits.  *Id*. at 46.  The
defendant was injured in an automobile accident; pursued a claim
for damages against the tortfeasor's insurance company, USAA; and
informed the defendant that she was pursuing a claim against
USAA.  *Id*. at 47.  The plaintiff made a claim against the
tortfeasor on behalf of the defendant for economic damages for
"un-reimbursed past medical expenses and future expenses."  *Id*.
at 48.  Without any involvement by the plaintiff, USAA settled
with the defendant and made a payment to the defendant's
attorney.  *Id*.  Ten months later USAA received a notice of an
arbitration hearing concerning a claim for interinsurer PIP
reimbursement filed by the plaintiff pursuant to Oregon Revised

25 - OPINION AND ORDER

Statute § 742.534.  *Id.*  When USAA requested the plaintiff to
withdraw its claim for arbitration due to settlement of the
matter, the plaintiff filed an action against defendant for,
among other things, breach of fiduciary duty "based solely on the
premise that defendant had prejudiced plaintiff's right to direct
interinsurer reimbursement from USAA pursuant to ORS 742.534."
*Id.*  The court noted the defendant's policy provided it had the
right to seek reimbursement and "the right to assert each of the
remedies provided by Oregon Revised Statutes ORS 742.534, ORS
742.536, and ORS 742.538."  *Id.* at 53.  The policy also provided:

> In the event of any payment under this policy we
> are entitled to all the rights of recovery of the
> person to whom payment was made against another.
> That person must . . . do whatever . . . is
> necessary to help us exercise those rights *and do
> nothing after loss to prejudice our rights.*

*Id.* at 55 (emphasis in original).  The court noted the Oregon
Insurance Code did not contain any "corresponding language *viz*
'shall do nothing to prejudice' the insurer's 'rights.'"  *Id.*
The appellate court concluded the trial court properly rejected
the plaintiff's breach-of-fiduciary-duty claim.  The court
reasoned plaintiff's claim "rests on plaintiff's assertion . . .
that the insurance contract gave plaintiff superior right to
recovery of PIP benefits from its insured than those contemplated
by the PIP reimbursement statutes" in violation of Oregon Revised
Statute § 742.021, which prohibits insurers from including
provisions in plans that are less favorable than the provisions

26 – OPINION AND ORDER

of the Oregon Insurance Code.  *Id.* at 61.

In *Mid-Century*, however, the parties did not raise and the court did not address whether ERISA preempts the requirement that an insurance company's plan provisions cannot be less favorable than provisions of the Oregon Insurance Code. Moreover, this Court concluded in its April 15, 2009, Opinion and Order that ERISA preempts § 742.021 as to Defendant's reimbursement and subrogation provisions because

> § 742.021 requires that the terms of insurance policies cannot be less favorable to the insured than provisions of the Oregon Insurance Code.  To decide Plaintiff's claim would require a comparison of the terms of Plaintiff's ERISA Plan to the requirements of the Oregon Insurance Code and a determination as to whether the terms of the Plan are "less favorable."  Plaintiff's claim as to § 742.021 also has a connection with an ERISA plan because adjudication of this claim would require the Court to interpret the terms of the Plan and to compare them to the requirements of the Oregon Insurance Code.

Opin. and Order at 20 (issued Apr. 15, 2009).  On this record, the Court does not find any reason to alter its conclusion that ERISA preempts § 742.021 under the circumstances of this case.

In summary, the Court concludes Plaintiff's claims involving §§ 742.536 and 742.538 as they are currently framed are preempted by ERISA because they are related to and have a connection with Defendant's ERISA plan, and, therefore, Defendant is not precluded from seeking a lien or reimbursement under the terms of its Plan even though it failed to perfect any right of

27 - OPINION AND ORDER

reimbursement under the provisions of chapter 742.

## II.  **The Made-Whole Rule.**

Plaintiff contends even if Defendant relies on the subrogation provision in its Plan, Defendant may not recover its lien at this time because Plaintiff has not been made whole by her recoveries.

### A.  **The Rule.**

In *Barnes v. Independent Auto Dealers Association of California Health and Welfare Benefit Plan*, the Ninth Circuit adopted the "generally accepted rule that, in the absence of a clear contract provision to the contrary, an insured must be made whole before an insurer can enforce its right to subrogation." 64 F.3d 1389, 1394 (9th Cir. 1995).  The Ninth Circuit noted

> [i]t is a general equitable principle of insurance law that, absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole.  *See Fields v. Farmers Ins. Co.*, 18 F.3d 831, 835 (10th Cir. 1994)(diversity case listing jurisdictions following the rule); *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 39 (11th Cir. 1989)(ERISA case noting that subrogation right not mature until insured is reimbursed for loss).  The [made-whole] principle
>
> is a rule of interpretation.  No one doubts that the beneficiary of an insurance policy or (as here) an employee welfare or benefits plan can if he wants sign away his [made-whole] right.  The right exists only when the parties are silent. It is a gap filler.

*Id*. (quoting *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1297

(7th Cir. 1993)).

        The Ninth Circuit concluded it "would not apply the
interpretive [made-whole] rule as a 'gap-filler' if the
subrogation clause in the plan document specifically allowed the
plan the right of first reimbursement out of any recovery [the
insured] was able to obtain even if [the insured] were not made
whole." *Id*. at 1395.  The Ninth Circuit applied the made-whole
rule in *Barnes* because the plan at issue in that case did not
contain such a provision.

    **B.    Collateral estoppel pursuant to *Simnett*.**

        Here Defendant asserts the Plan includes a subrogation
clause that specifically allows Defendant the right of first
reimbursement out of any recovery that Plaintiff receives.
Specifically, Defendant relies on the following Plan language:

> By accepting membership in the Plan, you make an
> agreement with us – if you receive a settlement
> for an illness or injury, you must pay us back for
> the cost of your treatment.
> *Example:  You are injured while on a weekend visit
> to a coastal resort. You sue, and are awarded
> $7,500 plus attorney's fees.  Meanwhile, the Plan
> has paid a total of $6,000 for treatment of your
> injury, so you must reimburse us for $6,000 out of
> your settlement.*
>
> Before you accept any settlement, you must let us
> know the terms, and tell the third party that we
> have an interest in the settlement.  If you have
> medical bills after your (*sic*) receive a
> settlement, we will not pay those bills until your
> settlement is exhausted.

Decl. of Kathleen Warren, Ex. 2 at 43 (emphasis in original).

29 – OPINION AND ORDER

Plaintiff, in turn, asserts the language relied on by Defendant is not sufficiently clear to "displace the default rule that an insured must be made whole before an insurer can seek reimbursement." *See Providence Health Plan of Or. v. Simnett*, Civil No. 08-44-HA, 2009 WL 700873, at *8 (D. Or. Mar. 13, 2009). Plaintiff relies on *Simnett* to support her assertion.

In *Simnett* the defendant, a participant in the plaintiff's benefit plan, was injured in a car accident. The plaintiff paid $143,194.69 for the defendant's medical care. The defendant subsequently recovered $25,000 from the tortfeasor and $250,000 from her own UIM policy. The plaintiff brought an action seeking reimbursement of the $143,194.69 that it paid for the defendant's medical care pursuant to a subrogation clause in its plan. *Id.*, at *1-3. The defendant asserted she had not been "made whole" by her recoveries, and, therefore, the plaintiff was not entitled to reimbursement for the defendant's medical expenses. *Id.*, at *8. The plaintiff asserted the following provision of the plan precluded application of the made-whole rule and provided the plaintiff with the right of first reimbursement from any recovery by a plan member: "By accepting membership in the Plan, you make an agreement with us – if you receive a settlement for an illness or injury, you must pay us back for the cost of your treatment." *Id*. The court examined the decisions of numerous courts that had evaluated similar

30 - OPINION AND ORDER

language in plan documents to determine whether it was
"sufficiently clear to displace the default rule that an insured
must be made whole before an insurer can seek reimbursement."
The court concluded the provision in the plaintiff's plan was
"insufficient to disavow the made whole doctrine. . . . [T]he
subrogation language stating a participant 'must pay the [plan]
back' for medical expenses is insufficiently clear to defeat the
presumption that the made whole rule applies." *Id.*, at *9.
Accordingly, the court concluded the defendant was entitled to be
made whole before the plaintiff could seek reimbursement. *Id*.

Plaintiff notes Providence Health Plan, Defendant in
this case, was the plaintiff in *Simnett*. Thus, the provision
relied on by Providence Health Plan in this case to establish
that it disavowed the made-whole rule is the same provision the
*Simnett* court concluded did not disavow the made-whole rule.
Plaintiff, therefore, asserts Defendant is collaterally estopped
from asserting that its Plan disavows the made-whole rule.

**C. Application of offensive collateral estoppel.**

Defendant notes the Court has "broad discretion" in
determining when to apply offensive collateral estoppel. *See
Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979).
*See also Collins v. D.R. Horton, Inc,* 505 F.3d 874, 882 (9th Cir.
2007)(same). When it "would be unfair to a defendant, a . . .
judge should not allow the use of offensive collateral estoppel."

31 - OPINION AND ORDER

*Id.    See also Collins,* 505 F.3d at 882 (same).  Defendant asserts
it would be unfair for this Court to allow Plaintiff to apply
offensive collateral estoppel as to whether Defendant's
subrogation language is sufficient to disavow the made-whole rule
because, according to Defendant, the *Simnett* court erred in its
analysis.

Specifically, Defendant contends the *Simnett* court
erroneously failed to recognize that interpretation of the plan
language is subject to review under the abuse-of-discretion
standard rather than the *de novo* standard when the plan
unambiguously confers discretionary authority on the plan
administrator to interpret the terms of the plan.  According to
Defendant, therefore, the *Simnett* court should have applied the
abuse-of-discretion standard when it interpreted the plan, and,
as a result, the court would have concluded the *Simnett* plaintiff
did not abuse its discretion when it interpreted the terms of its
plan to disavow the made-whole rule.  Because Defendant did not
appeal the court's ruling in *Simnett,* Defendant relies on *Barnes*
and *Cutting* to support its position.

The Ninth Circuit noted in *Barnes* that

> courts have upheld findings that a reference in a
> subrogation clause to "any" or "all" rights of
> recovery overrides the rule.  *See, e.g., Fields*,
> 18 F.3d at 835-36 ("any recovery" sufficient under
> Oklahoma law to abrogate [made-whole] rule);
> *Cutting*, 993 F.2d at 1299 (in ERISA case, not
> *unreasonable* to find that "all claims" language
> overrode [made-whole] rule).  In those cases,

however, . . . the court avoided the determination whether the [made-whole] rule survived by deferring to the interpretation of the plan administrator, when the benefit plan, unlike the one in this case, gave the administrator discretion to interpret its provisions (*Cutting* ). *Cf. Guy*, 877 F.2d at 38-39 (applying [made-whole] rule to find that ERISA plan was arbitrary and capricious in withholding benefits, where subrogation clause referred to "any rights of recovery").

64 F.3d at 1396 (emphasis in original).  In *Cutting* the

defendant, an employee-benefits plan, demanded reimbursement from

the plaintiff for any amounts she had received from other sources

pursuant to a subrogation clause of the plan, which provided:

[B]y accepting any payment of plan benefits the covered employee or dependent "agrees that the Plan shall be subrogated to all claims, demands, actions and rights of recovery of the individual against any third party or any insurer, including Workers' Compensation, to the extent of any and all payments made or to be made hereunder by the Plan."

993 F.2d at 1295.  The plaintiff refused to reimburse the

defendant on the ground that the defendant's right of subrogation

did not arise until the plaintiff had been made whole.  *Id*.  The

defendant then refused to pay the plaintiff further benefits.

The Seventh Circuit concluded the plaintiff was entitled to

judicial review of the defendant's decision based on an abuse-of-

discretion standard.  The court noted the plan contained a

provision reserving interpretation of the plan to the defendant

as follows:  "[A]ll decisions concerning the interpretation or

application of this Plan shall be vested in the sole discretion

33 - OPINION AND ORDER

of the Plan Administrator." *Id*. at 1295-96.  The Seventh Circuit

ultimately concluded it could not "say that the [defendant] was

*unreasonable* in interpreting this plan as disclaiming the made-

whole principle."

> Here the Plan provides in pertinent part:
>
> The Plan Administrator . . . shall have the
> authority to control and manage the operation of
> the Plan and shall have all powers necessary to
> accomplish those purposes.  The responsibility and
> authority of the Plan Administrator shall include,
> but not be limited to, the following:
>
> * * *
>
> (e)  Interpreting the provisions of the Plan
> and publishing such rules for the regulation of
> the Plan as are deemed necessary and not
> inconsistent with the terms of the Plan.

Warren Decl., Ex. 1 at 3.  This language unambiguously confers

discretionary authority on the Plan administrator to interpret

the terms of the Plan, and, therefore, the Court concludes it

must review Defendant's interpretation of the Plan terms based on

an abuse-of-discretion standard rather than *de novo*.  *See Abatie*

*v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir.

2006).  Because the *Simnett* court reviewed Defendant's plan *de*

*novo* rather than under an abuse-of-discretion standard, the

Court, in the exercise of its discretion, finds *Simnett* does not

directly apply here and, therefore, declines to apply offensive

collateral estoppel.

**D.  Abuse-of-discretion review of the Plan's subrogation
     provision.**

34 - OPINION AND ORDER

As noted, the subrogation provision of Defendant's Plan provides in pertinent part:  "By accepting membership in the Plan, you make an agreement with us - if you receive a settlement for an illness or injury, you must pay us back for the cost of your treatment."  Kathleen Warren, a Financial Transaction Analyst for Providence Health Plan, testifies in her Declaration that Defendant interprets this provision "as meaning that a beneficiary must reimburse the Plan from any settlement proceeds the beneficiary receives, regardless of whether the beneficiary was made whole by the settlement."  Warren Decl. at ¶ 3.

In *Providence Health System-Washington v. Bush*, the court addressed whether the made-whole rule applied to the plaintiff's right of reimbursement.  461 F. Supp. 2d 1226 (W.D. Wash. 2006).  The plan contained the following provisions:

> Situations may arise in which health care expenses are also covered by a source other than the plan. If so, the plan won't provide benefits that duplicate the other coverage.
>
> * * *
>
> **Third-Party Liability** - If someone else is legally responsible or agrees to compensate you for injuries suffered by you or a family member, you will need to reimburse the plan for up to 100% of any benefits the plan paid in connection with those injuries.  This reimbursement may be reduced in the same proportion by which the settlement, judgment or other recovery is reduced for payment of costs and attorneys' fees reasonably incurred in obtaining that recovery.
>
> **Recovery of Excess Payments** - Whenever payments have been made in excess of the amount necessary

> to satisfy the provisions of this plan, the plan
> has the right to recover those excess payments
> from any individual, insurance company, or other
> organization to whom the excess payments were
> made.

*Id*. at 1234.  The court concluded:

> Nowhere in the plan language is there a
> suggestion, let alone a clear statement, that a
> plan beneficiary is signing away his or her [made-
> whole] rights.  Neither the [made-whole] doctrine
> nor any euphemism sounding like the [made-whole]
> doctrine is mentioned in the plan. Similarly,
> application of the [made-whole] doctrine as a "gap
> filler" would not contravene any statement from
> the plan heretofore quoted to the Court by the
> parties.
>
> * * *
>
> Neither the reference to reimbursement for "up to
> 100%" nor to "the plan won't provide benefits that
> duplicate the other coverage" is inconsistent with
> the proposition that a plan beneficiary reimburses
> nothing until a settlement or payment from a third
> party compensates the beneficiary for his/her
> entire loss, including past and future medical
> payments, past and future economic loss, and
> general damages.

*Id*. at 1235.  The plaintiff asserted "even if the plan's terms

are not clear, the [made-whole] rule still does not apply because

the plan administrator has determined that the language in the

plan excludes application of the doctrine." *Id*.  Relying on the

Seventh Circuit's holding in *Cutting,* the plaintiff argued when

"the plan does give discretion to the plan administrator [as it

does here], then it should be the administrator who fills the

void and not the federal common law." *Id.* at 1236.

The Washington District Court disagreed:

36 - OPINION AND ORDER

> The rule advocated by counsel would give the plan administrator unfettered discretion to create terms and conditions never intended by the parties, no matter how unreasonable.  While the discretion conferred upon the plan administrator is necessarily broad, it cannot be exercised in such a way as to abrogate important rights of the beneficiary without so much as a hint that the parties intended such an outcome.
>
> A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable.  *G. Bogert & G. Bogert, Law of Trusts and Trustees*, § 559, at 169-171 (2d rev. ed. 1980); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989).  Here, on the subject at hand, the terms of the plan are not doubtful and the interpre-tation of the plan administrator is not reasonable.  The [made-whole] doctrine is clearly not eliminated from the plan by virtue of its precise terms.  Applying the ruling in *Barnes* to the facts of this case, the trustee, acting on behalf of the plan beneficiary, does not have to reimburse the plan until the beneficiary is fully compensated for her loss.

*Id.*  The court, therefore, concluded the made-whole rule applied and the defendant was not required to reimburse the plaintiff until the defendant was fully compensated for her loss.  *Id.*

This Court finds persuasive the analysis of the *Bush* court and notes the provisions of the Plan at issue here, like those in *Bush,* do not suggest or clearly state a plan beneficiary is signing away his or her made-whole rights.  In particular, the made-whole rule is not mentioned in the Plan.  Similarly, application of the made-whole rule would not contravene any Plan provision noted by the parties.  In addition, the reference to

37 - OPINION AND ORDER

subrogation of "all claims, demands, actions and rights of recovery of the individual against any third party or any insurer reimbursement" is not inconsistent with the proposition that a beneficiary of Defendant's Plan is not required to reimburse anything until a settlement or payment from a third party compensates the beneficiary for his or her entire loss, including past and future medical payments, past and future economic loss, and general damages.

The Court, therefore, finds the Plan administrator's interpretation of the Plan to preclude the made-whole rule is unreasonable and an abuse of the administrator's discretion in these circumstances.  Accordingly, the Court concludes the made-whole rule applies as a "gap filler" in this matter, and Plaintiff need not reimburse Defendant until she has been made whole for her entire loss.

### E. Made-whole rule as to Plaintiff's loss.

Plaintiff asserts she will not be made whole by her recoveries totaling $100,000 from the tortfeasor's automobile insurance and her UIM carrier.  Plaintiff points to the fact that she has incurred $172,861.80 in medical expenses as of August 14, 2009.  Stanke Decl. at ¶ 11.  In addition, Plaintiff's counsel testifies in his Declaration that he estimates Plaintiff's claims for past medical expenses, future medical expenses, past pain and suffering, and future pain and suffering are worth between

38 - OPINION AND ORDER

$600,000 and $1,000,000 based on counsel's review of Plaintiff's medical records, billing statements, conversations with Plaintiff's treating physician, and conversations with Plaintiff. Stanke Decl. at ¶ 16.

Defendant, however, asserts Stanke's Declaration is not sufficient to establish that Plaintiff has not been made whole because it constitutes hearsay and Stanke is not qualified to opine as to Plaintiff's future medical needs or future pain and suffering.

In *Barnes* the plaintiff submitted an affidavit from her attorney estimating the value of her claim to be at least $65,000, and, therefore, the plaintiff asserted that she had not been made whole.  64 F.3d at 1395.  The district court refused to consider the attorney's affidavit on the ground that it was "'not adequate proof' showing a genuine issue of for trial because it was mere theorizing without specific factual support.'"  *Id*.  The Ninth Circuit noted:

> The affidavit states that the $65,000 figure is based on the cost of the operation, pain and suffering, and special damages.  The motion for good faith settlement, which was attached as an exhibit to the affidavit, stated that Barnes had $8,906.92 in lost wages.
>
> [The plaintiff] underwent a surgical discectomy and fusion. The Plan did not dispute the $65,000 figure or present its own estimate.

*Id*.  The court pointed out:  "If necessary, we could take judicial notice that a condition requiring such major surgery,

39 - OPINION AND ORDER

and the surgery itself, involve pain and suffering and may well cause permanent partial disability." *Id.* (citing *Hines ex rel. Sevier v. Sec'y of the Dep't of Health & Human Servs.*, 940 F.2d 1518, 1527 (Fed. Cir.1991)("Well-known medical facts are the types of matters of which judicial notice may be taken.")).

Here counsel's Declaration is based on Plaintiff's medical records, billing statements, and conversations with Plaintiff and her treating physician.  In addition, Defendant does not dispute Plaintiff sustained at least $89,089.37 in medical expenses and that Plaintiff received a settlement for only $100,000.

The Court takes note of the litany of extremely serious injuries suffered by Plaintiff (including complex, nondisplaced compression and chance fracture at L3 level extending completely through posterior elements and disrupting all visible posterior supportive ligaments, right anterior abdominal wall hematoma, jejunal serosal tear, significant left paracentral acquired spinal canal stenosis, left neural foraminal compromise, broad disk bulge at L4-L5 level, disruption of posterior paraspinous ligaments and muscles at l3 level, significant stretch injury to nerve roots at l3 level, ascending colon contusion, and intestinal/peritoneal adhesions with obstruction), that Plaintiff was transported to the hospital using life flight, and that Plaintiff had at least two surgeries requiring extended

40 - OPINION AND ORDER

hospitalization.   Pursuant to *Barnes*, the Court also takes judicial notice that Plaintiff's condition requiring such major surgery and the surgery itself involved severe pain and suffering and may well cause permanent, partial disability that will likely result in more than $11,000 in additional damages for Plaintiff. The Court, therefore, concludes there is not any genuine issue of material fact as to whether Plaintiff has been made whole:  she has not.

On this record, the Court grants Plaintiff's Motion as to her claim that Defendant cannot enforce a lien against Plaintiff's recoveries because she has not been made whole and, accordingly, denies Defendant's Motion for Summary Judgment as to its Counterclaims involving Plaintiff's made-whole allegations.

### PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

As noted, on October 7, 2009, Plaintiff filed a Motion for Leave to File a Second Amended Complaint in which she seeks leave to amend her First Amended Complaint to add allegations that she has not been made whole by the settlements recovered from the third-party insurer and her UIM carrier and that Defendant failed to properly elect reimbursement under § 742.538.

### Standards

Federal Rule of Civil Procedure 15(a)(2) provides leave to amend "shall be freely given when justice so requires."

41 - OPINION AND ORDER

> The decision of whether to grant leave to amend
> . . . remains within the discretion of the
> district court, which may deny leave to amend due
> to "undue delay, bad faith or dilatory motive on
> the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed,
> undue prejudice to the opposing party by virtue of
> allowance of the amendment, [and] futility of
> amendment."

*Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir.

2008)(quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## Discussion

Plaintiff seeks leave to file a second amended complaint for

the purpose of explicitly adding the following allegations:

(1) Defendant "failed to properly elect reimbursement by

'subrogation' under" Oregon Revised Statute § 742.538 and

(2) Plaintiff has not been made whole "for her damages arising

from the June 4, 2007 car crash by the settlements she has

recovered from the liability insurer for the at-fault driver and

from her underinsured motorist carrier."  In her Reply, Plaintiff

notes the Court "need only consider" this Motion if it

> (a) rejects her argument that Providence has
> waived any lien or subrogation rights it may have
> had by clearly and unequivocally electing to
> proceed under ORS 742.534 instead of ORS 742.536
> or 742.538, (b) agrees with Providence that
> Plaintiff may not argue that Providence has failed
> to establish subrogation rights under ORS 742.538
> because the First Amended Complaint does not
> explicitly cite ORS 742.538, and (c) agrees with
> Providence that Plaintiff may not invoke the
> [made-whole] doctrine because the First Amended
> Complaint does not explicitly state that her third
> party recoveries have not made her whole.
> Plaintiff's Motion for Leave to Amend her

> Complaint is in no way a concession that her First
> Amended Complaint is defective, but is submitted
> only in the event that the Court agrees with
> Providence's arguments and finds that Plaintiff is
> precluded from invoking the [made-whole] doctrine
> or ORS 742.538 by her First Amended Complaint.

Defendant opposes Plaintiff's Motion on the grounds that (1) Plaintiff unduly delayed filing her Motion for Leave, (2) Plaintiff's filing of a second amended complaint at this stage would prejudice Defendant, (3) Plaintiff brings her Motion for Leave in bad faith, and (4) amending Plaintiff's First Amended Complaint would be futile.  Notwithstanding Defendant's objections to Plaintiff's proposed Second Amended Complaint, the Court notes Defendant has already thoroughly addressed in its Motion for Summary Judgment and related pleadings Plaintiff's allegations that Defendant failed to seek subrogation properly under § 742.538 and that Plaintiff has not been made whole.

## I.   Plaintiff has provided a reasonable explanation for failing to make her additional allegations sooner.

Defendant argues the Court should deny Plaintiff's Motion because Plaintiff unduly delayed filing her Motion.

"Although delay is not a dispositive factor in the amendment analysis, it is relevant, *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990), especially when no reason is given for the delay, *Swanson v. United States Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996)." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).

43 - OPINION AND ORDER

Defendant notes the Court set a case-management schedule in this matter that included a July 12, 2009, deadline to amend the pleadings.  On July 7, 2009, the Court granted Plaintiff's Motion for Leave to File an Amended Complaint and Plaintiff did so on July 15, 2009.  According to Defendant, even though Plaintiff was aware of the facts necessary to support allegations as to the made-whole rule and subrogation under § 742.538 on July 15, 2009, when she filed her First Amended Complaint, she did not seek leave to amend her First Amended Complaint until October 7, 2009, which was nearly three months after the deadline set by the Court, after Plaintiff's Motion for Summary Judgment was fully briefed, and after Defendant filed its Cross-Motion for Summary Judgment.

At oral argument, Plaintiff asserted the facts underlying her proposed new allegations have "always been present in every complaint that's been filed."  Plaintiff advised the Court that she did not realize Defendant intended to argue Plaintiff had to plead specific language as to the made-whole rule until Defendant filed its Cross-Motion for Summary Judgment.  Plaintiff asserts she filed her Motion for Leave to Amend her First Amended Complaint as soon as she was aware of Defendant's argument.

On this record, the Court concludes Plaintiff has provided a reasonable explanation for her failure to allege in her original Complaint and her First Amended Complaint that she had not been

made whole or that Defendant failed to comply with § 742.538.

## II. Defendant has not established it would be prejudiced if the Court allowed Plaintiff to file the proposed Second Amended Complaint.

Defendant asserts it will be prejudiced if the Court allows Plaintiff to include the new allegations in her Complaint because Defendant may have to conduct additional discovery to defend itself adequately against these claims. As Plaintiff notes, however, Defendant is Plaintiff's health insurer and is aware of the expenses that Plaintiff has incurred and that have been paid in medical benefits. Defendant is also aware of the extent of Plaintiff's injuries. In fact, Defendant's statements in its Concise Statement of Material Facts that it has paid $89,089.37 in medical expenses for Plaintiff and that Plaintiff has received $100,000 from settlements with the third-party insurer and her UIM carrier are undisputed. These facts are sufficient for the parties to properly litigate Plaintiff's made-whole and § 742.538 subrogation claims. Moreover, Defendant has not identified any further discovery that would be necessary to litigate Plaintiff's new allegations properly. Finally, Defendant has thoroughly analyzed in its Motion for Summary Judgment and related pleadings the allegations that Plaintiff seeks to add in her proposed Second Amended Complaint.

The Court, therefore, concludes on this record that Defendant has not established it would be prejudiced if the Court

45 - OPINION AND ORDER

allowed Plaintiff to file her proposed Second Amended Complaint.

## III. Defendant has not established Plaintiff brings her Motion in bad faith.

Defendant asserts Plaintiff brings her Motion in bad faith because she filed it after Defendant filed its Cross-Motion for Summary Judgment and after the Court's deadline for amending pleadings.  Moreover, even though Plaintiff asserted in the past that ERISA did not preempt her claims, she now seeks to rely on the ERISA made-whole rule.

The Court has already concluded Plaintiff offered a credible explanation as to why she did not seek to amend her First Amended Complaint before October 2009 to include allegations relating to the made-whole rule and § 742.538.  In addition, the Court notes the made-whole rule is a federal common-law rule recognized by the Ninth Circuit as applying to all insurance law and not limited merely to benefit plans subject to ERISA.  *Barnes*, 64 F.3d at 1394.  The Court, therefore, concludes on this record that Defendant has not established Plaintiff brings her Motion in bad faith.

## IV. The proposed amendments to Plaintiff's First Amended Complaint are not entirely futile.

Defendant asserts Plaintiff's proposed amendments would be futile because § 742.538 does not preclude Defendant's right to reimbursement and, moreover, the made-whole rule does not apply.

For the reasons noted earlier, the Court concludes

46 - OPINION AND ORDER

§ 742.538 does not preclude Defendant's right to reimbursement under the Plan and, therefore, allowing Plaintiff to add allegations involving Defendant's failure to comply with § 742.538 would be futile.  The Court, however, also concludes for the reasons noted earlier that the made-whole rule applies in this case, and, therefore, it would not be futile to allow Plaintiff to amend her First Amended Complaint to add an allegation that she has not been made whole.

On this record and in the exercise of the Court's discretion, the Court grants Plaintiff's Motion for Leave to File a Second Amended Complaint and deems Plaintiff's proposed Second Amended Complaint filed as of October 19, 2009, the date Plaintiff filed her Motion for Leave to File Second Amended Complaint.  The Court, as noted, however, denies Plaintiff's added claim that Defendant can seek subrogation only under § 742.538.

## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiff's Motion (#27) for Summary Judgment and **DENIES** Defendant's Cross-Motion (#31) for Summary Judgment on the ground that the record reflects Plaintiff has not been made whole.  The Court, therefore, concludes Plaintiff is entitled to a judgment that Defendant may not enforce its right to a lien or reimbursement under the Plan

47 - OPINION AND ORDER

until Plaintiff has been made whole.  In addition, the Court concludes Plaintiff is entitled to recover her costs and attorneys' fees incurred to obtain this result.

The Court also **GRANTS** Plaintiff's Motion (#46) for Leave to File Second Amended Complaint and deems it filed as of October 19, 2009.

Finally, the Court **DIRECTS** the parties to confer to determine (1) whether further proceedings are needed to resolve any issues in Plaintiff's Supplemental Complaint (#61) as to Defendant's alleged failure to provide Plaintiff with a complete copy pf the Plan Document, (2) what specific declarations the parties propose the Court to make consistent with its rulings herein, and (3) whether the parties are able to resolve Plaintiff's claim for costs and attorneys' fees without further litigation.  The Court **DIRECTS** the parties to submit a joint status report no later than **April 16, 2010**, addressing these issues and any other matters of concern to the parties pertaining to entry of a final judgment.

IT IS SO ORDERED.

DATED this 16th day of March, 2010.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District

48 - OPINION AND ORDER